UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA and the
FLORIDA DEPARTMENT OF STATE,

   *Plaintiffs*,

v.                             Case No. 24-cv-509

The DEPARTMENT OF HOMELAND
SECURITY; and ALEJANDRO
MAYORKAS, in his official capacity
as Secretary of the United States
Department of Homeland Security,

   *Defendants*.
_____/

## COMPLAINT FOR
## PERMANENT INJUNCTIVE RELIEF

    1.    Since taking office, the Biden-Harris Administration has "effectively turned the Southwest Border into a meaningless line in the sand and little more than a speedbump for aliens flooding into the country." *Florida v. United States*, 660 F. Supp. 3d 1239, 1249 (N.D. Fla. 2023).

    2.    While estimates vary on the impact of the border crisis, there are at a minimum millions of new unauthorized aliens present in our country.

    3.    States have limited power to enforce federal law and deport these individuals when the federal government cannot or will not do so. *See Arizona v. United States*, 567 U.S. 387, 401–02 (2012) (observing that "a *single* sovereign" is "responsible

for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders" (emphasis added)). But States can at a minimum ensure state laws are followed, including laws prohibiting non-citizens from voting in Florida elections. *See* Art. VI, § 2, Fla. Const.; *see also* Matthew Tragesser, *Illegal Aliens Are Still Voting in Our Elections*, Heritage Found. (July 10, 2024) (providing examples of non-citizen voting).[1]

4. As part of preventing voter fraud, including non-citizen voting, the State of Florida has an obligation to maintain accurate and current voter registration records. *See* § 98.075(1), Fla. Stat.

5. And as part of "the prerogatives and responsibilities of the States and the National Government vis-à-vis one another," *Bond v. United States*, 564 U.S. 211, 221 (2011), the federal government has an obligation to cooperate with the States in ensuring only citizens vote in their elections.

6. That cooperation mandate is based in two provisions of federal law. First, 8 U.S.C. § 1373(c) requires the federal government to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency. . . ." Second, 8 U.S.C. § 1644 states that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [federal

---

[1] Available at https://www.heritage.org/election-integrity/commentary/illegal-aliens-are-still-voting-our-elections.

immigration authorities] information regarding the immigration status, lawful or unlawful, of an alien in the United States."

7. Because the federal government is refusing to comply with these obligations and frustrating Florida's ability to maintain the integrity of its elections, Florida files this suit.

## PARTIES

8. Plaintiff State of Florida is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. As the State's Chief Legal Officer, Attorney General Ashley Moody is authorized to represent the interests of the State in civil suits. *See* § 16.01(4), (5), Fla. Stat.

9. Plaintiff, the Florida Department of State (FDOS), is an agency of the State of Florida.[2] *See* § 20.10, Fla. Stat. FDOS has responsibility under both state and federal law to ensure that Florida's voter registration rolls are current and accurate. *See* § 98.075(1), Fla. Stat. (providing that FDOS "shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records"); § 98.093(1), Fla. Stat. (requiring FDOS to access information from state and federal officials "[i]n order to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system"); 52 U.S.C. § 21083(a)(1)(A)(4) (requiring states to "ensure that voter registration records in the State are accurate and updated regularly").

---

[2] Plaintiffs, State of Florida and the Florida Department of State, are collectively referred throughout as "Florida."

3

10. Defendant Department of Homeland Security (DHS) is an agency of the United States Government. DHS is responsible for providing immigration status information to States under 8 U.S.C. § 1373(c). *See also* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note.

11. Defendant Alejandro Mayorkas is the Secretary of DHS. DHS is the federal agency principally responsible for immigration enforcement. Florida sues Secretary Mayorkas in his official capacity.

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 1361, and 2201–02, and 5 U.S.C. §§ 702–06.

13. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 705–06, 28 U.S.C. §§ 1361 and 2201–02, the Constitution, and the Court's equitable powers.

14. Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1) because Florida sues the federal government and the State is a resident of every judicial district in its sovereign territory, including this judicial district (and division). *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443, at *2 (N.D. Fla. Jan. 18, 2022).

## BACKGROUND

### Legal Background

15. The Constitution primarily charges the States with safeguarding and administering the electoral process, subject to certain federal limits. *See, e.g.*, *Arizona v.*

*Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 7–9 (2013) (discussing the state and federal balance struck by the Framers in the Elections Clause, U.S. Const. Art. I, § 4, cl. 1).

16. Under federal and Florida law, the State of Florida has an obligation to ensure the integrity of elections conducted within the State by maintaining accurate voter registration records. *See, e.g.*, 52 U.S.C. § 21083(a) (requiring States to maintain accurate voter registration records and make reasonable efforts to remove ineligible registrants); 52 U.S.C. § 20501(b)(4) (similar); § 98.075(1), Fla. Stat. ("The [Florida Department of State] shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records.").

17. One facet of that duty is ensuring that ineligible voters have not registered to vote in Florida elections. *See* § 98.075, Fla. Stat. (requiring Florida supervisors of elections to remove ineligible voters from voter rolls).

18. Under Florida law, only U.S. citizens are eligible to vote in Florida elections. Art. VI, § 2, Fla. Const.; § 97.041(1)(a)(2), Fla. Stat. Federal law mirrors this limit. *See* 18 U.S.C. §§ 611, 1015.

19. As part of its duty to maintain voter registration rolls, FDOS must verify that non-citizens have not been registered to vote in Florida. *See* § 98.075(1), Fla. Stat. (providing that FDOS "shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records"); § 98.093(1), Fla. Stat. (requiring FDOS to access information from state and federal officials "[i]n order

to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system").

20. Under Florida law, the Florida Department of Highway Safety and Motor Vehicles notifies FDOS when a person presents evidence of non-citizenship while seeking a new or renewed Florida driver's license, Florida identification card, or other updated record. *See* § 98.093(8)(b), Fla. Stat.

21. Other state agencies also routinely report evidence of non-citizenship, such as when a person indicates non-citizen status in response to a jury notice or when a law enforcement investigation discovers that a non-citizen is registered to vote.

22. FDOS is then responsible for investigating citizenship status and reporting that information to the relevant supervisor of elections who makes a final determination about voter roll removal in accordance with procedures set by Florida law. *See* § 98.075(7), Fla. Stat.

23. While the information FDOS receives from state agencies is reasonably reliable, frequently such data is not sufficiently conclusive for FDOS to report it to a supervisor of elections.

24. Further, Florida cannot track and maintain immigration and citizenship information on its own. *See Arizona*, 567 U.S. at 401–02 (observing that "a *single* sovereign" is "responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders" (emphasis added)). That responsibility lies with the federal government, namely DHS. *See id.* (describing the federal regime of alien registration).

25. Recognizing this asymmetry in information, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208 (IIRIRA). Through IIRIRA, Congress mandated that the Immigration and Naturalization Service (INS) "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see also* 8 U.S.C. § 1644 (prohibiting any restrictions on communication between state and local governments and the INS regarding immigration status of aliens).

26. In 2003, with the creation of DHS, the INS was transferred from the Department of Justice to DHS. *See* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note. Three DHS components, U.S. Citizenship and Immigration Services (USCIS), Immigration and Customs Enforcement, and Customs and Border Protection now perform the functions of the INS, including implementation of 8 U.S.C. § 1373(c).

## Factual Background

27. The primary way DHS seeks to comply with § 1373(c) is through a program created by USCIS called the Systematic Alien Verification for Entitlements (SAVE) program. *See* 76 Fed. Reg. 58,525, 58,526 (Sept. 21, 2011) (noting that the SAVE program "include[s] the implementation of [8 U.S.C. § 1373(c)]"); *see also* Immigration Reform and Control Act, Pub. L. 99-603 (1986) (requiring the INS to establish a system to make immigration status information available to state agencies).

28.   SAVE is an "online service for [government agencies] to verify immigration status."[3]

29.   The SAVE program is available to federal, state, and local benefit-issuing agencies, including state or local governments, who upon request "use SAVE for any legal purpose, such as credentials, background investigations, and voter registration." 76 Fed. Reg. at 58,527.

30.   Initially, the federal government refused to make the SAVE program available to the State of Florida to protect the integrity of its elections. In 2012, however, FDOS sued DHS to compel it to grant FDOS access to the SAVE program to verify voter immigration status. *See* Compl., Doc. 1, *Fla. Dep't of State v. DHS*, No. 1:12-cv-960 (D.D.C. June 11, 2012).

31.   As a result of that lawsuit, FDOS and DHS entered into a memorandum of agreement (the MOA) that allowed FDOS to access the SAVE program to verify citizenship and immigration status information for persons on Florida's voter registration rolls. Ex. 1.

32.   SAVE is a useful but inadequate tool that the State of Florida now uses to protect the integrity of its elections, with notable limitations.

33.   To conduct a SAVE inquiry, a state agency must submit both biographic information and a unique immigration identifier from the person in question.[4] A

---

[3] https://www.uscis.gov/save.

[4] Verification Process, SAVE, U.S. Citizenship & Immigration Servs. (July 29, 2024), https://www.uscis.gov/save/about-save/save-verification-process.

8

unique immigration identifier may include a USCIS/Alien remigration number (A-number), an arrival/departure record number (Form I-94), a student exchange ID number, a naturalization or citizenship certificate number, or another identifier assigned to an alien by the federal government.[5] But, "SAVE cannot verify a benefit applicant's status using a Social Security Number, driver's license number, U.S. Passport number, foreign passport number, Consular Report of Birth Abroad or other non-DHS documentation."[6]

34. Thus, in situations where a state agency does not have a unique immigration identifier for an individual, it cannot conduct a SAVE inquiry.

35. In the months preceding the filing of this complaint, FDOS identified a number of individuals[7] for whom FDOS had evidence of non-citizenship but could not run a search on the SAVE database because FDOS does not have unique immigration identifiers for these individuals. All of the individuals identified by FDOS are currently registered to vote in Florida.

36. On September 10, 2024, FDOS sent a letter to Tammy Meckley, Associate Director, Immigration Records and Identity Services Directorate, U.S.

---

[5] *Id.*

[6] *Id.*

[7] Florida law restricts the personal information FDOS may publicly disclose regarding these individuals. *See* § 97.0585(1), Fla. Stat. Should it be necessary to the resolution of this case, Florida is willing to file redacted information in an amended complaint or to provide the information to Defendants and the Court under a protective order.

9

Citizenship and Immigration Services, requesting verification of citizenship status for several identified individuals. Ex. 2.[8]

37.  On October 10, 2024, FDOS received a response from Ur Jaddou, Director of USCIS. Ex. 3. In that letter, USCIS denied FDOS's request for further information about the specific individuals in question and refused to offer any means of identifying immigration status beyond the SAVE program. Ex. 3 at 2–3.

38.  Separately, FDOS officials attempted to submit inquiries regarding these individuals to the Immigration Records & Identity Services division of USCIS. Ex. 4 at 2. A USCIS official confirmed that there is no other method of verifying the immigration or citizenship status of an individual available to state agencies apart from SAVE. Ex. 4 at 2. The USCIS official also verified that SAVE cannot verify status without at least one enumerator from a U.S. issued immigration document. Ex. 4 at 2.

39.  Since then, FDOS has identified several more individuals for whom it cannot conduct a SAVE inquiry due to a lack of unique immigration identifier.

40.  Thus, Florida has identified a subset of individuals for whom it cannot verify citizenship or immigration status through SAVE and for whom DHS refuses to verify citizenship or immigration status through other means. And even assuming Florida were able to verify citizenship or immigration status without DHS cooperation, such efforts would certainly expend significant state resources.

---

[8] A September 9, 2024 version of this letter contained a minor error. Florida attaches the corrected version as its exhibit.

41. On information and belief, Defendants have readily accessible information apart from the SAVE program that is responsive to Florida's inquiries. Defendants are obligated under 8 U.S.C. § 1373(c) to provide that information to Florida.

42. Without further information from DHS, Florida is unable to fulfill its statutory duties to ensure the integrity of its elections and maintain accurate voter registration records. Florida's inability to carry out its statutory obligations inflicts sovereign injury upon the state. *See Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State."); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quotation omitted)), *quoted with approval*, *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *7 (11th Cir. Aug. 22, 2024).

## CLAIMS

## COUNT 1

### Agency action unlawfully withheld or unreasonably delayed

43. Florida repeats and incorporates by reference ¶¶ 1–42.

44. Under the Administrative Procedure Act (APA), a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The

APA further requires that an agency "proceed to conclude a matter presented to it" within "a reasonable time." 5 U.S.C. § 555(b).

45. Under 8 U.S.C. § 1373(c), Defendants are required to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . by providing the requested verification or status information."

46. Defendants' failure to timely provide information in response to FDOS's inquiry to verify or ascertain the citizenship or immigration status of the individuals within its jurisdiction for verification of voter eligibility amounts to agency action unreasonably delayed or unlawfully withheld within the meaning of 5 U.S.C. § 706.

## COUNT 2

### Mandamus

47. Florida repeats and incorporates by reference ¶¶ 1–42.

48. Under the Mandamus Act, the court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

49. Defendants owe Florida a clear nondiscretionary duty to respond to the State's inquiry to verify or ascertain the citizenship or immigration status of individuals within its jurisdiction for a purpose authorized by law. *See* 8 U.S.C. § 1373(c).

50. As a direct and proximate cause of Defendants' failure to provide access, Florida has been irreparably harmed and continues to suffer ongoing irreparable harm.

51. Because Florida has "a clear right to the relief sought," Defendants have "a clear duty to act," and "no other adequate remedy is available,"[9] mandamus relief is warranted. *See Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (holding that the "common-law writ of mandamus, as codified in 28 U.S.C. § 1361," is appropriate where plaintiff "has exhausted all other avenues of relief" and "the defendant owes him a clear nondiscretionary duty").

52. A writ of mandamus should issue compelling Defendants to provide verification of the citizenship or immigration status of individuals identified in FDOS's September 10, 2024 letter, Ex. 2, pursuant to 8 U.S.C. § 1373(c).

## COUNT 3

### Agency action not in accordance with law and in excess of authority in violation of the APA

53. Florida repeats and incorporates by reference ¶¶ 1–42.

54. Under the APA, a court shall hold unlawful and set aside agency action—including the "failure to act"—when it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 551(13), 701(b)(2), 706(2)(A), (C).

---

[9] Florida agrees that complete relief under Count 1 would obviate the need for mandamus relief.

55. Defendants' decision to use only the SAVE program to respond to inquiries under § 1373(c)—even though they possess additional information not available through that program—is contrary to their statutory obligations.

56. Section 1373(c) requires Defendants to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . *by providing the requested verification or status information.*" 8 U.S.C. § 1373(c) (emphasis added); *see also* 8 U.S.C. § 1644 (prohibiting any restrictions on communication between state and local governments and DHS regarding immigration status of aliens).

57. These requirements apply to Florida's request to verify immigration or citizenship status of a person who cannot be verified through the SAVE program. Defendants' decision to limit their responses to inquiries that can be made via the SAVE program violates § 1373(c).

## COUNT 4

### Declaratory Judgment

58. Florida repeats and incorporates by reference ¶¶ 1–42.

59. Under the Declaratory Judgment Act, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

60. Section 1373(c) states that Defendants "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the

agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c).

61.  When a state agency requests verification of an individual's citizenship or immigration status because the State cannot conduct a SAVE inquiry or a SAVE inquiry is inconclusive, Defendants owe a nondiscretionary duty to respond to that inquiry with any and all reasonably available information in Defendants' custody under § 1373(c).

62.  Because Defendants have received an inquiry from Florida to verify or ascertain the citizenship or immigration status of individuals within its jurisdiction for a purpose authorized by law, Florida is entitled to a declaration that Defendants must "respond" to the inquiry "by providing the requested verification or status information." 8 U.S.C. § 1373(c).

## PRAYER FOR RELIEF

For these reasons, Florida asks the Court to enter judgment in favor of the Florida and award the following relief:

a) An order holding unlawful Defendants' failure to provide Florida with a response to its inquiry to verify or ascertain the citizenship or immigration status of individuals within its jurisdiction for a purpose authorized by law, 8 U.S.C. § 1373(c), and compelling Defendants to provide a response;

b) A declaration that Florida is entitled to a response to its inquiries under 8 U.S.C. § 1373(c);

c) Permanent injunctive relief, or the issuance of a writ of mandamus, ordering Defendants and their officers, employees, and agents to respond to inquiries made by Florida under 8 U.S.C. § 1373(c);

d) An award of Florida's costs and reasonable attorneys' fees, as appropriate; and

e) An award of any further relief to Florida that this Court deems, just, proper, and equitable.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James Percival*
James H. Percival (FBN 1016188)
CHIEF OF STAFF

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Natalie P. Christmas (FBN 1019180)
SENIOR COUNSELOR

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the Plaintiffs*