## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

STATE OF FLORIDA; FLORIDA
DEPARTMENT OF STATE; STATE
OF OHIO; FRANK LAROSE, in his
official capacity as OHIO
SECRETARY OF STATE; BRENNA
BIRD, in her official capacity as the
Attorney General of Iowa; PAUL
PATE, in his official capacity as the
Secretary of State of Iowa; STATE OF
INDIANA; and DIEGO MORALES, in
his official capacity as INDIANA
SECRETARY OF STATE,

     *Plaintiffs*,

     v.                               No. 3:24-cv-509-TKW-HTC

The DEPARTMENT OF HOMELAND
SECURITY; and KRISTI NOEM in
her official capacity as Secretary of the
United States Department of
Homeland Security,

     *Defendants.*

_____/

## AMENDED COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF[1]

1.     The Biden-Harris Administration "effectively turned the Southwest

Border into a meaningless line in the sand and little more than a speedbump for

aliens flooding into the country." *Florida v. United States*, 660 F. Supp. 3d

1239, 1249 (N.D. Fla. 2023).

---

[1] All parties consent to the filing of this amended complaint. *See* Fed. R. Civ. P. 15(a)(2).

2.     While estimates vary on the impact of the border crisis, there are at a minimum millions of new unauthorized aliens present in our country.

3.     States have limited power to enforce federal law and deport these individuals when the federal government cannot or will not do so. *See Arizona v. United States*, 567 U.S. 387, 401–02 (2012) (observing that "a *single* sovereign" is "responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders" (emphasis added)). But States can at a minimum ensure state laws are followed, including laws prohibiting non-citizens from voting in State and local elections. *See* Art. VI, § 2, Fla. Const.; Ohio Rev. Code § 3501.05; Iowa Code §§ 48A.5(2)(*a*), 39A.2(1)(*a*)(1); Ind. Code § 3-7-13-1; *see also* Matthew Tragesser, *Illegal Aliens Are Still Voting in Our Elections*, Heritage Found. (July 10, 2024) (providing examples of non-citizen voting).[2]

4.     As part of preventing voter fraud, including non-citizen voting, the Plaintiffs—the States of Florida, Ohio, Iowa, and Indiana, as well as certain of their officials responsible for election integrity—have an obligation to maintain accurate and current voter registration records. *See* § 98.075(1), Fla. Stat.; Ohio Rev. Code § 3501.04; Iowa Code §§ 47.1, 47.7, 39A.7; Ind. Code §§ 3-7-26.3-10 & 16; Ind. Code § 3-7-38.2-7.3.

5.     And as part of "the prerogatives and responsibilities of the States and

---

[2]  Available at https://www.heritage.org/election-integrity/commentary/illegal-aliens-are-still-voting-our-elections.

the National Government vis-à-vis one another," *Bond v. United States*, 564 U.S. 211, 221 (2011), the federal government has an obligation to cooperate with the States in ensuring only citizens vote in their elections.

6.    That cooperation mandate is based in two provisions of federal law. First, 8 U.S.C. § 1373(c) requires the federal government to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency.  .  .  . " Second, 8 U.S.C. § 1644 states that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [federal immigration authorities] information regarding the immigration status, lawful or unlawful, of an alien in the United States."

7.    The Plaintiffs file this suit because the federal government has refused to comply with these obligations and has frustrated the Plaintiffs' ability to maintain the integrity of their elections.

## PARTIES

8.    Plaintiff State of Florida is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. As the State's Chief Legal Officer, Attorney General James Uthmeier is authorized to represent the interests of the State in civil suits. *See* § 16.01(4), (5), Fla. Stat.

9.    Plaintiff, the Florida Department of State (FDOS), is an agency of the

3

State of Florida.[3] *See* § 20.10, Fla. Stat. FDOS has responsibility under both state and federal law to ensure that Florida's voter registration rolls are current and accurate. *See* § 98.075(1), Fla. Stat. (providing that FDOS "shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records"); § 98.093(1), Fla. Stat. (requiring FDOS to access information from state and federal officials "[i]n order to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system"); 52 U.S.C. § 21083(a)(1)(A)(4) (requiring states to "ensure that voter registration records in the State are accurate and updated regularly").

10.     Plaintiff State of Ohio indisputably has a compelling interest in preserving the integrity of its election process. Ohio has both a sovereign duty and a federal statutory obligation to protect the franchise. *See* 52 U.S.C. § 21083(a)(1)– (5).

11.     Plaintiff Frank LaRose is suing in his official capacity as the Ohio Secretary of State. He is "the chief election officer of the state, with such powers and duties relating to the registration of voters and the conduct of elections as are prescribed" in Ohio law. Ohio Rev. Code § 3501.04. Ohio law makes the Secretary of State responsible for "[c]ompel[ling] observance by election officers ... of the

---

[3] Plaintiffs, State of Florida and the Florida Department of State, are collectively referred throughout as "Florida."

requirements of the election laws." Ohio Rev. Code § 3501.05(M).

12.    Plaintiff Paul Pate is the Secretary of State of Iowa. The Secretary of State is the State commissioner of elections and supervises the activities of the county commissioners of elections. Iowa Code § 47.1. The Secretary is also the State's chief election officer. Iowa Code § 47.1. The Secretary is the State Registrar of Voters, responsible for voter registration and ensuring accuracy of the rolls. Iowa Code § 47.7; *see generally* Iowa Code ch. 48A.

13.    Plaintiff Brenna Bird is the Attorney General of Iowa. She is authorized by Iowa law to sue on the State's behalf under Iowa Code § 13.2. The Attorney General also has exclusive authority to investigate and prosecute certain election-related crimes. *See* Iowa Code §§ 13.11, 39A.5, 39A.6.

14.    Plaintiff the State of Indiana has a compelling "interest in protecting the integrity and reliability of the electoral process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008). Indiana has both a sovereign duty and a federal statutory obligation to safeguard its elections. *See* 52 U.S.C. § 21083(a)(1)–(5).

15.    Plaintiff Diego Morales is the Secretary of State of Indiana. The Secretary of State serves as the "state's chief election official." Ind. Code § 3-6-3.7-1. By state law, both the Indiana Attorney General and the Indiana Secretary of State are tasked with safeguarding the lawful and orderly administration of Indiana elections. *See, e.g.*, Ind. Code § 3-6-4.1-22; Ind. Code § 3-6-3.7-1; Ind.

Code § 3-7-26.3-10.

16.    Defendant Department of Homeland Security (DHS) is an agency of the United States Government. DHS is responsible for providing immigration status information to States under 8 U.S.C. § 1373(c). *See also* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note.

17.    Defendant Kristi Noem is the Secretary of DHS. DHS is the federal agency principally responsible for immigration enforcement. Plaintiffs sue Secretary Noem in her official capacity.

## JURISDICTION AND VENUE

18.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 1361, and 2201–02, and 5 U.S.C. §§ 702–06.

19.    The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 705–06, 28 U.S.C. §§ 1361 and 2201–02, the Constitution, and the Court's equitable powers.

20.    Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiff Florida sues the federal government and the State is a resident of every judicial district in its sovereign territory, including this judicial district (and division). *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443, at *2 (N.D. Fla. Jan. 18, 2022).

# BACKGROUND

## Legal Background

21.    The Constitution primarily charges the States with safeguarding and administering the electoral process, subject to certain federal limits. *See, e.g.*, *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 7–9 (2013) (discussing the state and federal balance struck by the Framers in the Elections Clause, U.S. Const. Art. I, § 4, cl. 1).

22.    Under federal and state laws, the Plaintiffs have an obligation to ensure the integrity of elections conducted within their States by maintaining accurate voter registration records. *See, e.g.*, 52 U.S.C. § 21083(a) (requiring States to maintain accurate voter registration records and make reasonable efforts to remove ineligible registrants); 52 U.S.C. § 20501(b)(4) (similar); § 98.075(1), Fla. Stat. ("The [Florida Department of State] shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records."); Ohio Rev. Code §§ 3501.04, 3501.05; Iowa Code §§ 47.7, 39A.2; Ind. Code §§ 3-7-26.3-10 & 16.

23.    One facet of that duty is ensuring that ineligible voters have not registered to vote in state or local elections. *See* § 98.075, Fla. Stat. (requiring Florida supervisors of elections to remove ineligible voters from voter rolls); Ohio Rev. Code § 3501.05(M), (N); Iowa Code ch.39A; Ind. Code §§ 3-7-26.3-10 & 16; Ind. Code § 3-7-38.2-7.3.

### *Florida*

24.    Under Florida law, only U.S. citizens are eligible to vote in Florida elections. Art. VI, § 2, Fla. Const.; § 97.041(1)(a)(2), Fla. Stat. Federal law mirrors this limit. *See* 18 U.S.C. §§ 611, 1015.

25.    As part of its duty to maintain voter registration rolls, FDOS must verify that non-citizens have not been registered to vote in Florida. *See* § 98.075(1), Fla. Stat. (providing that FDOS "shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records"); § 98.093(1), Fla. Stat. (requiring FDOS to access information from state and federal officials "[i]n order to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system").

26.    Under Florida law, the Florida Department of Highway Safety and Motor Vehicles notifies FDOS when a person presents evidence of non-citizenship while seeking a new or renewed Florida driver's license, Florida identification card, or other updated record. *See* § 98.093(8)(b), Fla. Stat.

27.    Other Florida state agencies also routinely report evidence of non-citizenship, such as when a person indicates non-citizen status in response to a jury notice or when a law enforcement investigation discovers that a non-citizen is registered to vote.

28.    FDOS is then responsible for investigating citizenship status and

reporting that information to the relevant supervisor of elections who makes a final determination about voter roll removal in accordance with procedures set by Florida law. *See* § 98.075(7), Fla. Stat.

29.   While the information FDOS receives from state agencies is reasonably reliable, frequently such data is not sufficiently conclusive for FDOS to report it to a supervisor of elections.

30.   Further, Florida cannot track and maintain immigration and citizenship information on its own. *See Arizona*, 567 U.S. at 401–02 (observing that "a *single* sovereign" is "responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders" (emphasis added)). That responsibility lies with the federal government, namely DHS. *See id.* (describing the federal regime of alien registration).

### *Ohio*

31.   Under the Ohio Constitution, "[o]nly a citizen of the United States" may be permitted to vote at any State or local election held in the State. Ohio Const. art. 5, § 1. Secretary LaRose's duties include maintaining an accurate legal voter registration database. *See, e.g.*, 52 U.S.C. § 21083(a)(1)–(5); Ohio Rev. Code § 3501.04. His office also responds to county boards of elections' requests for verification of individual registered voters' citizenship.

32.   Ohio law requires that the Ohio Secretary of State "[c]ompel the observance by election officers in the several counties of the requirements of the

election laws" and to "investigate the administration of election laws, frauds, and irregularities in elections in any county." Ohio Rev. Code § 3501.05(M), (N)(1). He must also "establish and maintain a statewide voter registration database that shall be administered by the office of data analytics," Ohio Rev. Code § 3503.15(A), and "conduct an annual review … to identify persons who appear not to be United States citizens" by comparing the registration database with Ohio Bureau of Motor Vehicles records, Ohio Rev. Code § 3503.152.

33.    When the Ohio Secretary of State identifies a registered voter who does not appear to be a United States citizen, he must provide that person notice and an opportunity to respond, and if necessary, "refer the matter to the attorney general for further investigation and possible prosecution." *Id.*

34.    Like Florida, Ohio cannot track and confirm citizenship information on its own.

### *Iowa*

35.    Iowa law also explains that to be "qualified to register to vote as an eligible elector" the first condition is that the elector "[b]e a citizen of the United States." Iowa Code § 48A.5(2)(*a*); *see also* Iowa Const. art. II, § 1.

36.    Iowa law makes it a felony to lie about citizenship status when registering to vote, Iowa Code § 39A.2(1)(a)(1), and for a noncitizen to cast a vote, *Iowa Code* . § 39A.2(1)(b)(3).

37.    The Attorney General of Iowa has the authority to investigate to

10

determine whether criminal activity occurred in connection with an election. Iowa Code § 39A.7. That authority includes the authority to investigate if noncitizens have registered to vote in Iowa and the authority to investigate whether noncitizens have voted in Iowa.

38.    The Secretary is required by federal law to maintain the State's voter-registration list "in a manner that ensures that . . . voters . . . who are not eligible are removed" from the list. 52 U.S.C. §§ 21083(a)(2)(A), (a)(2)(B); *see also* 52 U.S.C. § 20507 (recognizing a state's obligation to conduct programs to remove ineligible voters from the rolls).

39.    Like other States, Iowa's statewide voter registration system does not contain any immigration identifiers and the State of Iowa cannot, alone, track immigration status of would-be voters.

### *Indiana*

40.    The Indiana Constitution permits "citizen[s] of the United States . . . [to] vote . . . [in] election[s]." Ind. Const. art. 2, § 2; *see also* Ind. Code § 3-7-13-1 ("A person must[] . . . be a United States citizen . . . to register to vote[.]").

41.    Indiana law penalizes voter registration application fraud and unauthorized voting in elections. Ind. Code § 3-14-2-2; Ind. Code § 3-14-2-9.

42.    The Indiana Secretary of State is the "state's chief election official" and is required to "provide [] support" to county voter registration offices by maintaining a "computerized list" of registered voters. Ind. Code § 3-6-3.7-1; Ind.

Code § 3-7-26.3-10.

43.    Indiana law requires that the statewide voter registration system be reviewed for the existence of non-citizen ineligible voters. Ind. Code § 3-7-38.2-7.3.

44.    Like other States, Indiana cannot track and confirm citizenship information entirely on its own.

* * *

45.    Recognizing this asymmetry in information, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208 (IIRIRA). Through IIRIRA, Congress mandated that the Immigration and Naturalization Service (INS) "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see also* 8 U.S.C. § 1644 (prohibiting any restrictions on communication between state and local governments and the INS regarding immigration status of aliens).

46.    In 2003, with the creation of DHS, the INS was transferred from the Department of Justice to DHS. *See* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note. Three DHS components, U.S. Citizenship and Immigration Services (USCIS), Immigration and Customs Enforcement, and Customs and Border

Protection now perform the functions of the INS, including implementation of 8 U.S.C. § 1373(c).

## Factual Background

47.    The primary way DHS seeks to comply with § 1373(c) is through a program created by USCIS called the Systematic Alien Verification for Entitlements (SAVE) program. *See* 76 Fed. Reg. 58,525, 58,526 (Sept. 21, 2011) (noting that the SAVE program "include[s] the implementation of [8 U.S.C. § 1373(c)]"); *see also* Immigration Reform and Control Act, Pub. L. 99-603 (1986) (requiring the INS to establish a system to make immigration status information available to state agencies).

48.    SAVE is an "online service for [government agencies] to verify immigration status."[4]

49.    The SAVE program is available to federal, state, and local benefit-issuing agencies, including state or local governments, who upon request "use SAVE for any legal purpose, such as credentials, background investigations, and voter registration." 76 Fed. Reg. at 58,527.

50.    Initially, the federal government refused to make the SAVE program available to the State of Florida to protect the integrity of its elections. In 2012, however, FDOS sued DHS to compel it to grant FDOS access to the SAVE program to verify voter immigration status. *See* Compl., Doc. 1, *Fla. Dep't of State*

---

[4] https://www.uscis.gov/save.

*v. DHS*, No. 1:12-cv-960 (D.D.C. June 11, 2012).

51.    As a result of that lawsuit, FDOS and DHS entered into a memorandum of agreement (the MOA) that allowed FDOS to access the SAVE program to verify citizenship and immigration status information for persons on Florida's voter registration rolls. Ex. 1.

52.    SAVE has been a useful but inadequate tool that the Plaintiffs used to protect the integrity of its elections, with notable limitations.

53.    To conduct a SAVE inquiry, a state agency had to submit both biographic information and a unique immigration identifier from the person in question.[5] A unique immigration identifier may include a USCIS/Alien remigration number (A-number), an arrival/departure record number (Form I-94), a student exchange ID number, a naturalization or citizenship certificate number, or another identifier assigned to an alien by the federal government.[6] But, SAVE could not "verify a benefit applicant's status using a Social Security Number, driver's license number, U.S. Passport number, foreign passport number, Consular Report of Birth Abroad or other non-DHS documentation."[7]

54.    Thus, in situations where a state agency did not have a unique immigration identifier for an individual, it could not conduct a SAVE inquiry.

---

[5] Verification Process, SAVE, U.S. Citizenship & Immigration Servs. (July 29, 2024), https://www.uscis.gov/save/about-save/save-verification-process.

[6] *Id.*

[7] *Id.*

55.    In 2024, FDOS identified a number of individuals[8] for whom FDOS had evidence of non-citizenship but could not run a search on the SAVE database because FDOS does not have unique immigration identifiers for these individuals. All of the individuals identified by FDOS were, at least at that time, registered to vote in Florida.

56.    On September 10, 2024, FDOS sent a letter to Tammy Meckley, Associate Director, Immigration Records and Identity Services Directorate, U.S. Citizenship and Immigration Services, requesting verification of citizenship status for several identified individuals. Ex. 2.[9]

57.    On October 10, 2024, FDOS received a response from Ur Jaddou, Director of USCIS. Ex. 3. In that letter, USCIS denied FDOS's request for further information about the specific individuals in question and refused to offer any means of identifying immigration status beyond the SAVE program. Ex. 3 at 2–3.

58.    Separately, FDOS officials attempted to submit inquiries regarding these individuals to the Immigration Records & Identity Services division of USCIS. Ex. 4 at 2. A USCIS official confirmed that there is no other method of verifying the immigration or citizenship status of an individual available to state agencies apart from SAVE. Ex. 4 at 2. The USCIS official also verified that SAVE

---

[8] Florida law restricts the personal information FDOS may publicly disclose regarding these individuals. *See* § 97.0585(1), Fla. Stat. Should it be necessary to the resolution of this case, Florida is willing to file redacted information in an amended complaint or to provide the information to Defendants and the Court under a protective order.

[9] A September 9, 2024 version of this letter contained a minor error. Florida attaches the corrected version as its exhibit.

cannot verify status without at least one enumerator from a U.S. issued immigration document. Ex. 4 at 2.

59.    Later, FDOS identified several more individuals for whom it could not conduct a SAVE inquiry due to a lack of unique immigration identifier.

60.    Thus, Florida had identified a subset of individuals for whom it could not verify citizenship or immigration status through SAVE and for whom DHS refused to verify citizenship or immigration status through other means. And even assuming Florida was able to verify citizenship or immigration status without DHS cooperation, such efforts would certainly have expended significant state resources.

61.    Without further information from DHS, Florida was unable to fulfill its statutory duties to ensure the integrity of its elections and maintain accurate voter registration records. Florida's inability to carry out its statutory obligations inflicts sovereign injury upon the state. *See Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State."); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quotation omitted)), *quoted with approval*, *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *7 (11th Cir. Aug. 22, 2024).

62.    Other Plaintiffs experienced similar problems.

16

63.     For example, Ohio faced an imminent threat of illegal non-citizens voting in state and federal elections in Ohio because the Ohio Secretary of State's office knows that there are currently individuals who have registered to vote in the State  whose citizenship status could not be confirmed via the SAVE program. Beginning in July 2024, Ohio has repeatedly requested that DHS provide access to federal databases and search tools to ensure the state could confirm the citizenship status of individuals whose status may be the subject of a dispute. DHS's refusal to provide the requested access leaves Ohio unable to discharge its own obligations under federal and state law to safeguard election integrity. *See* 52 U.S.C. § 21083(a)(1)–(5); Ohio Rev. Code § 3501.05(M), (N).

64.     Iowa sought to confirm the citizenship-status of voters that had self-identified as noncitizens to the Iowa Department of Transportation. Approximately 65,000 Iowa voters had not had their citizenship identified. On October 24, 2024, an agent from USCIS left a message with the Iowa Secretary of State's office explaining that he could aid Iowa in checking those voters' citizenship status.

65.     On October 25, 2024, the USCIS agent and the Secretary of State's Chief of Staff went over the work the Iowa Secretary of State had done and the agent offered to check remaining 2,176 names that the Secretary had not been able to verify citizenship. That evening, the agent confirmed that he had checked 146 names and 18% were noncitizens.

66.    On October 29, the Secretary of State received an email from the Washington, D.C. USCIS office instructing the Iowa USCIS agent not to release any information to the Secretary of State. At that time, the Secretary of State had been made aware that there were hundreds of noncitizens on the list of 2,176 suspected noncitizen voters. But USCIS refused to tell the Secretary or his office which registered voters did not have confirmed citizenship status in the SAVE file.

67.    As a result of USCIS refusing to cooperate with the Secretary, state and county officials were required to be on alert to challenge the potentially 2,176 ballots that included hundreds of known but not identified noncitizens. Several of those voters that were able to prove their citizenship status sued the Secretary.

68.    After the election and with the new administration, it has been confirmed that hundreds of noncitizens were on Iowa's voter rolls. Some who voted have been referred to investigation and potentially prosecution. Access to the SAVE file will help ensure voter integrity in Iowa and will prevent a need to challenge valid voters' ballots in the same manner as in the run up to the 2024 election going forward.

69.    On both October 11 and 18, 2024, Indiana Attorney General Todd Rokita and Indiana Secretary of State Diego Morales requested that USCIS provide the Secretary of State's office with access to citizenship information to ensure the eligibility of 585,774 individuals registered to vote in Indiana. But

USCIS failed to respond to or even acknowledge Secretary Morales' requests. Accordingly, Secretary Morales concluded that USCIS had chosen to deny his requests and disregard its statutory obligations to verify the citizenship status of registered voters.

70.    Because of USCIS's inaction, Secretary Morales was unable to confirm whether the 585,774 individuals who were the subject of his requests are authorized to vote in federal elections as required by federal law and in Indiana elections as required by Indiana law.

71.    Beginning in 2025, DHS/USCIS began making several changes to the SAVE system. *See Privacy Act of 1974; System of Records*, 90 Fed. Reg. 48,948 (Oct. 31, 2025) (describing changes). DHS/USCIS is in the process of adding individuals who are U.S. citizens by birth to the categories of individuals SAVE covers, and is updating the categories of records in the SAVE system to include collecting both full and truncated (last four digits) Social Security number, U.S. passport number, and driver's license number to enable State government users to use any of these numbers as an identifier to run SAVE searches. *See Id.* at 48,949. Despite these changes, Plaintiffs remain unable to confirm citizenship status for all individuals necessary.

## CLAIMS

## COUNT 1

### Agency action unlawfully withheld or unreasonably delayed

72.    Plaintiffs repeat and incorporate by reference ¶¶ 1–71.

73.    Under the Administrative Procedure Act (APA), a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA further requires that an agency "proceed to conclude a matter presented to it" within "a reasonable time." 5 U.S.C. § 555(b).

74.    Under 8 U.S.C. § 1373(c), Defendants are required to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . by providing the requested verification or status information."

75.    Defendants' failure to timely provide the required information in response to Plaintiffs' inquiries to verify or ascertain the citizenship or immigration status of the individuals within their jurisdiction for verification of voter eligibility amounts to agency action unreasonably delayed or unlawfully withheld within the meaning of 5 U.S.C. § 706.

## COUNT 2

### Mandamus

76.    Plaintiffs repeat and incorporate by reference ¶¶ 1–71.

77.    Under the Mandamus Act, the court may "compel an officer or

20

employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

78.    Defendants owe Plaintiffs a clear nondiscretionary duty to respond to the Plaintiffs' inquiries to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law. *See* 8 U.S.C. § 1373(c).

79.    As a direct and proximate cause of Defendants' failure to provide access, Plaintiffs have been irreparably harmed and continue to suffer ongoing irreparable harm.

80.    Because Plaintiffs have "a clear right to the relief sought," Defendants have "a clear duty to act," and "no other adequate remedy is available,"[10] mandamus relief is warranted. *See Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (holding that the "common-law writ of mandamus, as codified in 28 U.S.C. § 1361," is appropriate where plaintiff "has exhausted all other avenues of relief" and "the defendant owes him a clear nondiscretionary duty").

81.    A writ of mandamus should issue compelling Defendants to provide verification of the citizenship or immigration status of individuals identified in Plaintiffs' requests, including FDOS's September 10, 2024 letter, Ex. 2, pursuant to 8 U.S.C. § 373(c).

---

[10] Florida agrees that complete relief under Count 1 would obviate the need for mandamus relief.

## COUNT 3

### Agency action not in accordance with law and in excess of authority in violation of the APA

82.    Plaintiffs repeat and incorporate by reference ¶¶ 1–71.

83.    Under the APA, a court shall hold unlawful and set aside agency action—including the "failure to act"—when it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 551(13), 701(b)(2), 706(2)(A), (C).

84.    Defendants' decision to use only the SAVE program to respond to inquiries under § 1373(c) is contrary to their statutory obligations.

85.    Section 1373(c) requires Defendants to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . *by providing the requested verification or status information.*" 8 U.S.C. § 1373(c) (emphasis added); *see also* 8 U.S.C. § 1644 (prohibiting any restrictions on communication between state and local governments and DHS regarding immigration status of aliens).

86.    These requirements apply to Plaintiffs' requests to verify immigration or citizenship status of persons who cannot currently be verified through the SAVE program. Defendants' decision to limit their responses to inquiries that can currently be made via the SAVE program violates § 1373(c).

## COUNT 4

### Declaratory Judgment

87.    Plaintiffs repeat and incorporate by reference ¶¶ 1–71.

88.    Under the Declaratory Judgment Act, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

89.    Section 1373(c) states that Defendants "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c).

90.    When a state agency requests verification of an individual's citizenship or immigration status because the State cannot conduct a SAVE inquiry or a SAVE inquiry is inconclusive, Defendants owe a nondiscretionary duty to respond to that inquiry with any and all reasonably available information in Defendants' custody under § 1373(c).

91.    Because Defendants have received inquiries from Plaintiffs to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law, Plaintiffs are entitled to a declaration that Defendants must "respond" to these inquiries "by providing the requested verification or status information." 8 U.S.C. § 1373(c).

## PRAYER FOR RELIEF

For these reasons, Plaintiffs ask the Court to enter judgment in favor of the Plaintiffs and award the following relief:

a) An order holding unlawful Defendants' failure to provide Plaintiffs with the required response to their inquiries to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law, 8 U.S.C. § 1373(c), and compelling Defendants to provide that response;

b) A declaration that Plaintiffs are entitled to the required response to their inquiries under 8 U.S.C. § 1373(c);

c) Permanent injunctive relief, or the issuance of a writ of mandamus, ordering Defendants and their officers, employees, and agents to adequately respond to inquiries made by Plaintiffs under 8 U.S.C. § 1373(c);

d) An award of Plaintiffs' costs and reasonable attorneys' fees, as appropriate; and

e) An award of any further relief to Plaintiffs that this Court deems just, proper, and equitable.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL

*/s/ Caleb Stephens*
JEFFREY PAUL DESOUSA (FBN 110951)
*Acting Solicitor General*
JASON J. MUEHLHOFF
*Chief Deputy Solicitor General*
CALEB STEPHENS (FBN 1050554)
*Assistant Solicitor General*

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
caleb.stephens@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com
jenna.hodges@myfloridalegal.com

*Counsel for Plaintiffs State of Florida and the Florida Department of State*

*/s/ Ashley E. Davis*
Ashley E. Davis (FBN 48032)
*General Counsel*
FLORIDA DEPARTMENT OF STATE
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6531
(f):  (850) 245-6125
ashley.davis@dos.fl.gov

*Counsel for Plaintiff the Florida Department of State*

*/s/ R. Trent McCotter*
R. TRENT MCCOTTER
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, #900

25

Washington, DC 20006
(202) 955-0620
tmccotter@boydengray.com

*Counsel for Plaintiffs State of Ohio and Frank LaRose*

BRENNA BIRD
Attorney General of Iowa

*/s/ Patrick Valencia*
ERIC H. WESSAN
Solicitor General
PATRICK C. VALENCIA
Deputy Solicitor General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for Plaintiffs Brenna Bird and Paul Pate*

THEODORE E. ROKITA
*Attorney General of Indiana*

*/s/ Blake E. Lanning*
Blake E. Lanning
*Assistant Chief Deputy*

*/s/ William D. Young*
William D. Young
*Director of Policy and Strategic Initiatives*

Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6201

26

Blake.Lanning@atg.in.gov
William.Young@atg.in.gov

*Counsel for Plaintiffs State of Indiana and
Diego Morales*