UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA and the
FLORIDA DEPARTMENT OF STATE, et al.

    *Plaintiffs,*

    v.                     Case No. 3:24-cv-509-TKW-HTC

The DEPARTMENT OF HOMELAND SECURITY;
and ALEJANDRO MAYORKAS, in his
Official capacity as Secretary
of the United States
Department of Homeland Security,

    *Defendants.*

_____/

## EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiffs released and dismissed their claims against Defendants in exchange for Defendants' binding agreement to ensure that the Systematic Alien Verification for Entitlements (SAVE) program would operate in a way that brought the federal government into compliance with its statutory obligations to cooperate with States.

Defendants have now breached that agreement in several material respects by disabling several critical functionalities of the SAVE system. Plaintiffs face immediate and irreparable harm unless this Court exercises the jurisdiction it reserved to enforce the settlement agreement. Pursuant to the settlement agreement's dispute resolution provisions, Plaintiffs jointly and respectfully request that the Court order Defendants to immediately remedy their breach and restore the SAVE system's disabled functions.

## BACKGROUND

### A.   Plaintiffs' lawsuit.

This case involves Plaintiffs' obligations to maintain accurate and current voter registration records to prevent voter fraud, including non-citizen voting. *See* § 98.075(1), Fla. Stat.; Ohio Rev. Code § 3501.04; Iowa Code §§ 47.1, 47.7, 39A.7; Ind. Code §§ 3-7-26.3-10 & 16; Ind. Code § 3-7-38.2-7.3.  The federal government likewise has a duty to cooperate with States in ensuring that only citizens vote in their elections. *See* 8 U.S.C. § 1373(c); 8 U.S.C. § 1644.

Because the federal government had been refusing to comply with this obligation and had frustrated Plaintiffs' ability to maintain the integrity of their elections, Plaintiffs sued in November 2024. ECF 6.  In the amended complaint, Plaintiffs sought an order holding unlawful Defendants' failure to provide Plaintiffs with the required responses to their inquiries to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law; a declaration that Plaintiffs are entitled to the required response to their inquiries; and permanent injunctive relief, or the issuance of a writ of mandamus, ordering Defendants to adequately respond to the inquiries made by Plaintiffs. ECF 29, at 24.

### B.   The parties execute a settlement agreement and the Court approves it.

In November 2025, the parties executed a settlement agreement resolving all of Plaintiffs' claims.  ECF 30-1.  In exchange for Plaintiffs' release and dismissal of their claims, Defendants agreed—among other things—to "ensure that the SAVE

2

system has, at a minimum, the following capabilities" no later than 60 days after the

agreement's execution:

a. Free service for state, territorial, tribal, and local government agencies.

b. Integration with the Social Security Administration to allow searches with full Social Security Numbers (SSNs) to be used as a non-DHS enumerator.

c. Integration with the Social Security Administration to allow searches with last-four-digits SSNs to be used as a non-DHS enumerator.

d. The capacity to process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one.

e. The capacity to provide data supporting each verification, and a paper verifiable output that can be relied on by the user, including but not limited to identifying the supporting document type and number queried, and issue date of citizenship where available. This information may be provided by a downloadable .csv file.

f. The capacity to obtain U.S. citizenship or immigration-status information, either within 48 hours (for initial verification) or within SAVE's estimated "Additional Verification Response Time," as reported on the SAVE website, (for additional or manual verification), when provided the following data points:

    i. First name and last name; and

    ii. Date of birth; and

    iii. At least one of the following:

        1. A government-issued immigration enumerator (e.g., A-Number/USCIS Number, SEVIS ID, I-94 Number, Naturalization/Citizenship Certificate Number, Card Number / I-797 Receipt Number, or Visa Number); or

        2. Other government-issued enumerator permitted by SAVE (e.g., a full SSN, or the last-four-digits of an SSN).

ECF 30-1, at 4–5.

3

Relying on Defendants' guarantees in the settlement agreement, Plaintiffs moved to dismiss with prejudice under Federal Rule of Civil Procedure 41(a)(2). The Court granted that motion. ECF 31. In so doing, the Court expressly "retain[ed] jurisdiction over this case for a period of twenty years from the date of th[e] order [December 1, 2025] for the purpose of enforcement of the parties' settlement agreement, which is approved by and incorporated by reference into this order." ECF 31, at 1–2. The Court also ordered that "[a]ny party may, upon notice, seek to enforce the settlement agreement . . . by motion . . . brought in this Court, under the terms set forth in the parties' Settlement Agreement. *Id.* at 2.

From December 2025 to June 2026, Plaintiffs and Defendants performed their duties and obligations under the settlement agreement. As relevant here, Defendants ensured that the SAVE system had a bulk upload function and was searchable via Social Security Numbers and last-four-digits Social Security Numbers. *See* Ex. 1 ¶ 5, Declaration of Maria Matthews.

## C.    A district court issues an order vacating the modified SAVE system.

In late 2025, DHS and the Social Security Administration published System of Records Notices (SORNs) for the modifications made to their systems that allowed for the changed functionality of the SAVE system. Notice of a Modified System of Records, 90 Fed. Reg. at 48,948; Notice of a Modified System of Records, 90 Fed. Reg. 50,879.

A group of plaintiffs challenged the modifications made to the SAVE system outlined in those SORNs in the U.S. District Court for the District of Columbia. The

4

federal government defended the modifications to the SAVE program in its briefing, noting those changes were "as required by the judicially enforceable settlement agreement in *Florida*." *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss, ECF 77-1 at 63, *League of Women Voters v. U.S. Dep't of Homeland Sec'y*, No. 25-cv-3501.  Given the prior-in-time binding order, DHS in that case argued that "principles of equity and comity also require the Court not to enter relief that would subject the United States to conflicting court orders."  *Id*. at 62.

U.S. District Judge Sparkle L. Sooknanan ignored those concerns.  On June 22, 2026, Judge Sooknanan granted plaintiffs' motion for summary judgment and held that the modified SAVE system violated the Social Security Act and the Privacy Act of 1974 and that its establishment was arbitrary and capricious under the Administrative Procedure Act. *League of Women Voters*, 2026 WL 1784297, at *20, *21, *28 (D.D.C. June 22, 2026).  As a result, Judge Sooknanan issued an order "set[ting] asid[e] and vacat[ing] the SAVE 'modified system" and the related SORNs. *Id*. at *35.

**D.  Defendants disable functions of the SAVE system that are guaranteed by the settlement agreement.**

Remember, DHS admitted in its *League* papers that it was bound by this Court's order mandating compliance with the terms of its settlement agreement with the States in this case.  *See supra,* at 5.  But sometime around June 24, 2026, Defendants disabled the bulk upload function in SAVE.  Matthews Decl. ¶ 5. Defendants also disabled the ability for States to search the database with Social Security Numbers or last-four-digit Social Security Numbers.  Matthews Decl. ¶ 5.

**E.    The parties meet and confer.**

On June 25, 2026, the parties met and conferred regarding Defendants' breach. Defendants did not dispute that the bulk uploading and Social Security Number search functions were disabled, nor did they agree to Plaintiffs' request to preserve the status quo ante for the remainder of the dispute.  Instead, they simply conveyed the government's position that Judge Sooknanan's order binds DHS notwithstanding this Court's order incorporating and enforcing the settlement agreement at issue here.

Plaintiffs therefore filed this motion to enforce the settlement agreement.

## ARGUMENT

1.    Defendants admit that they are out of compliance with the settlement agreement in several respects.

2.    *First*, Defendants have disabled the bulk upload function in SAVE. Matthews Decl. ¶ 5.  This violates Defendants' duty and obligation to ensure that the SAVE system has "[t]he capacity to process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one."  ECF 30-1, ¶ 10(d).

3.    *Second*, Defendants have disabled the ability to search with Social Security Numbers. Matthews Decl. ¶ 5.  This breaches Defendants' duties and obligations to ensure that the SAVE system has: (1) "[i]ntegration with the Social Security Administration to allow searches with full Social Security Numbers (SSNs) to be used as a non-DHS enumerator"; (2) "[i]ntegration with the Social Security Administration to allow searches with last-four-digits SSNs to be used as a non-DHS

6

enumerator"; and (3) "[t]he capacity to obtain U.S. citizenship or immigration-status information, either within 48 hours (for initial verification) or within SAVE's estimated 'Additional Verification Response Time,' as reported on the SAVE website, (for additional or manual verification), when provided the following data points: i. First name and last name; and ii. Date of birth; and iii. At least one of the following: . . . Other government-issued enumerator permitted by SAVE (e.g., a full SSN, or the last-four-digits of an SSN)." ECF 30-1, ¶¶ 10(b), 10(c), 10(f).

4.    Under the settlement agreement, Defendants must "ensure that all of the capabilities described" above "remain operational" absent *only* (1) "a modification or amendment to this Settlement Agreement"; or (2) "unforeseen technical limitations that arise after" the agreement's execution.    ECF 30-1, ¶ 11.    The settlement agreement has been neither modified nor amended, and Defendants do not contend that any technical limitations have arisen.    Nor have Defendants suggested that compliance with the settlement agreement would be "inconsistent with the Constitution or with any federal statute in effect at the time of performance."    ECF 30-1, ¶ 17.

5.    The Court has jurisdiction to enforce the settlement agreement.    The Court retained jurisdiction over this case for a period of twenty years, a period that expires in 2045, for the express "purpose of enforcement of the parties' settlement agreement."    ECF 31, at 1; *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381–82 (1994) (a federal "court is authorized to embody [a] settlement contract in its dismissal order" and later "enforc[e]" that "settlement agreement.");

7

ECF 30-1, ¶ 23(k) (Plaintiffs and Defendants "agree[d] that they will be subject to the jurisdiction of the Court in the event of a violation" of the settlement agreement). The Court further expressly contemplated the filing of a "motion" by "[a]ny party" to "enforce the settlement agreement" under the terms set forth therein. *Id.* at 2.

7.     Under the settlement agreement, Plaintiffs may move to enforce the agreement immediately.  The settlement agreement provides that "Plaintiffs may elect to file . . . a motion . . . to enforce this settlement agreement." ECF 30-1, ¶ 23(a). "[I]f Plaintiffs believe irreparable injury may occur absent immediate action (in "Emergency Circumstances") and if Defendants decline to preserve the status quo ante (*i.e.*, the status quo before the act(s) alleged to constitute a breach) upon notice, Plaintiffs may immediately initiate proceedings before the Court to preserve the status quo, provided the Parties meet and confer before initiating any such proceedings.  *Id.* ¶ 23(b). "Defendants' consent is not required for Plaintiffs to initiate court proceedings, provided that the Parties have met and conferred as set forth in Paragraph 2[3](b)." *Id.* ¶ 23(f).

8.     All conditions for proceeding immediately to enforce the agreement have been met: (1) irreparable injury not only "may" but will occur absent immediate action; (2) Defendants have "decline[d] to preserve the status quo ante; and (3) the parties met and conferred on June 25, 2026, before filing this motion.

9.     Plaintiffs face irreparable injury. Many Plaintiffs have incorporated SAVE's now-disabled features into state law, meaning state officials can no longer abide by state statutory requirements.  *See, e.g.*, Fla. Stat. § 98.093(1); Iowa Code

Senate File 2218 (2026) (amending Iowa Code §§ 256.146 (hiring for educators), 91F.1 (hiring for law enforcement), 2.11 (hiring for the Legislature), 7E.3 (hiring for State agencies), 10A.101 (mandating SAVE usage for professional licenses), 10A.113 (same process), 10A.114 (same process), 262.9E (same for Iowa Regents institutions), 272C.15A (mandating licensing boards established after January 1, 1978, terminate professional licenses for anyone that cannot be verified as lawfully present in the United States "as determined by using the SAVE program clearinghouse"); Ohio R.C. 3503.152; Ohio R.C. 3503.18; *see also* Ex. 2, Declaration of Brian Katz.  Florida faces further imminent harm because it is required by law to mail vote-by-mail ballots no later than July 4, 2026.  Matthews Decl. ¶ 6.  Without the agreed-upon SAVE features, Florida "cannot identify potential noncitizens as accurately, efficiently, and timely to perform the daily duty of eligibility list maintenance that Florida law requires even through an election cycle and to ensure that only eligible registered voters who are U.S. citizens are casting votes in our elections."  Matthews Decl. ¶ 5.

10.    Defendants have declined to preserve the status quo ante.  As discussed above, Defendants admit that they have shut off access to the bulk upload verification requests and terminating integration with the Social Security Administration that allows searches with full and last-four-digits Social Security Numbers.

11.    The parties met and conferred before Plaintiffs filed this motion, and Defendants confirmed that they will not preserve the status quo ante.

12.    Because Defendants have failed to preserve the status quo ante, and because Plaintiffs will suffer irreparable injury absent immediate action, the Court

should exercise the jurisdiction it retained and enforce the settlement agreement per its order.  ECF 31.

13.    While the D.C. District Court found that Defendants' duties and obligations were inconsistent with federal statutes, that district court's determination is not binding on this Court.  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)).  So even if Defendants contend that the settlement agreement "impose[s] on [them] [a] duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance," they must overcome their explicit consent to the agreement.  ECF 30-1, ¶ 17.  The D.C. District Court did not address the plaintiffs' constitutional claims. *League of Women Voters*, 2026 WL 1784297, at *35.  As a result, because this Court has not held that Defendants' duties and obligations are inconsistent with the Constitution or any federal statute, Defendants are bound to comply with the settlement agreement.[1]

14.    The need for this order is even more pressing given Judge Sooknanan's blatant disregard for this Court's order.  Again, in *League of Women Voters*,

---

[1] To the extent Defendants argue that Plaintiffs' only remedy is to seek relief in the D.C. District Court, that is incorrect. This Court ordered that a motion or new action to enforce the settlement agreement must be "brought in this Court." ECF 31, at 2.

Defendants argued that those principles should preclude the court from granting relief—in part because of the settlement agreement in this very case—and  the district court rejected that argument, concluding that "Defendants' comity arguments are unavailing." *League of Women Voters*, 2026 WL 1784297, at *35.  Judge Sooknanan owed this Court's earlier judgment more than that. This Court has "ample . . . discretion" in assessing the interests of equity and comity, *Stone & Webster, Inc. v. Ga. Power Co.*, 779 F.3d 614, 617 (D.C. Cir. 2015) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)), and "[i]t seems particularly inappropriate that [this Court] should defer to another court when the other court has explicitly noted that deference is not necessary." *Emrick v. Bethlehem Steel Corp.*, 624 F.2d 450, 454 (3d Cir. 1980).[2]

*     *     *

16.    Defendants clearly breached their obligations, and nothing more is needed for this Court to step in and enforce the binding settlement agreement that was entered months before the D.C. District Court's decision.  But it's worth stepping back and noting the implications of Defendants' position.  If later third-party actors can get an adverse Court order that undermines the substance of a binding and judicially enforceable settlement agreement, how are States—or any other plaintiff— expected to rely on past or future settlement negotiations with the federal

---

[2] Plaintiffs, moreover, were not parties to the D.C. proceedings and are thus not bound by the D.C. District Court's judgment. *See Martin v. Wilks*, 490 U.S. 755, 761–62 (1989) (explaining that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings").

government?   Why should States release *any* claim when it is possible that their bargained-for benefits can be blithely cashiered by another court at any time?  "It is as much the duty of the government as of individuals to fulfil its obligations."  *United States v. Klein*, 80 U.S. 128, 144 (1871).  Plaintiffs ask for nothing more here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order requiring Defendants to immediately remedy their breach of the settlement agreement and restore (1) the bulk upload function in SAVE and (2) the ability to search with Social Security Numbers, including last-four-digits Social Security Numbers.

Respectfully submitted,

JAMES UTHMEIER
   *Attorney General*

DAVID M.S. DEWHIRST (FBN 1076928)
   *Solicitor General*

*/s/ Jason J. Muehlhoff*
JASON J. MUEHLHOFF (FBN 1076410)
   *Chief Deputy Solicitor General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3300
jason.muehlhoff@myfloridalegal.com

*Counsel for Plaintiffs State of Florida and the Florida Department of State*

BRENNA BIRD
Attorney General of Iowa

*/s/ Patrick Valencia*
ERIC H. WESSAN
*Solicitor General*
PATRICK C. VALENCIA
Deputy Solicitor General
ANGELA STUEDEMANN
Assistant Attorney General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
Eric.wessan@ag.iowa.gov
Patrick.valencia@ag.iowa.gov
Angela.stuedemann@ag.iowa.gov

*Counsel for Plaintiffs Brenna Bird and Paul Pate*

MICHAEL BUSCHBACHER
NICHOLAS CORDOVA
Boyden Gray PLLC
800 Connecticut Avenue NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
ncordova@boydengray.com

*Counsel for State of Ohio and Ohio Secretary of State Frank LaRose*

*/s/ Blake E. Lanning*
Blake E. Lanning
Assistant Chief Deputy
Attorney No. 35282-24

Office of the Indiana Attorney General
302 W. Washington St., IGCS – 5th Floor
Indianapolis, IN 46204-2770
Telephone: (317) 232-1146
Fax: (317) 232-7979
Email: Blake.Lanning@atg.in.gov

13

14

**CERTIFICATE OF SERVICE**

I certify that on June 30, 2026, a true and correct copy of the foregoing was

filed with the Court's CM/ECF system, which provides service to all parties.


*/s/ Jason J. Muehlhoff*
CHIEF DEPUTY SOLICITOR GENERAL