# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**State of Florida** and the **Florida Department of State**, et al.,

        Plaintiffs,

        v.

**Department of Homeland Security** and **Alejandro Mayorkas**

        Defendants.

Case No. 3:24-cv-509-TKW-HTC


**[Proposed] Brief of *Amici Curiae* League of Women Voters and Electronic Privacy Information Center**

## TABLE OF CONTENTS

Interests of *Amici Curiae* ..................................................................................1

Background ........................................................................................................2

Argument...........................................................................................................6

I.      DHS has not breached the settlement agreement by complying with the order in LWV ............................................................................................................8

II.     The settlement agreement cannot justify the relief Plaintiffs seek................11

Conclusion ......................................................................................................15

i

## INTERESTS OF *AMICI CURIAE*

Proposed *Amici Curiae* League of Women Voters and Electronic Privacy Information Center are plaintiffs in the case *League of Women Voters v. DHS*, 25-cv-3501 (D.D.C.), challenging the U.S. Department of Homeland Security's (DHS's) and Social Security Administration's (SSA's) overhaul of the Systematic Alien Verification for Entitlements (SAVE) system. *See League of Women Voters v. DHS*, -- F. Supp. 3d --, 2026 WL 1784297, at *1 (D.D.C. June 22, 2026). Proposed *amici* argued in that case that the government's overhaul of the SAVE system violated the privacy rights of millions of American citizens whose personal data was unlawfully repurposed, misused, and disclosed without their consent, and imperiled many Americans' fundamental right to vote. *See* First Amended Complaint, *LWV*, No. 25-cv-3501, ECF 61 at 2 (D.D.C. Jan. 21, 2026).

Following the government's production of a voluminous administrative record and extensive briefing by the parties, the court in that case recently granted summary judgment in favor of proposed *amici*, *LWV*, 2026 WL 1784297, at *2, finding that the SAVE overhaul violated the Social Security Act, Privacy Act, and Administrative Procedure Act, *id.* at *20-30, and in doing so had inflicted privacy or reputational injuries, voter injuries, and procedural injuries upon proposed *amici. Id.* at *11. To remedy the harms from this unlawful conduct, the court vacated the

1

challenged changes to the SAVE system. *See id.* at *35 (setting aside and vacating applicable System of Record Notices).

Proposed *amici* have an interest in ensuring that the remedy issued by the court in *LWV* remains in place to ameliorate the widespread harms the *LWV* court identified. Because the Plaintiffs in this case have requested that this Court order DHS to ignore the *LWV* court's decision, ECF 32, proposed *amici* respectfully submit this brief to argue that the *LWV* court's order does not conflict with the plain terms of the settlement agreement this Court previously approved, and to argue that, especially given the divergent scopes of the two cases, the Plaintiffs' motion is not a proper vehicle to obtain relief from the *LWV* court's order.

## BACKGROUND

Plaintiffs the State of Florida and Florida Department of State filed this case against DHS and the DHS Secretary on October 16, 2024, arguing that Defendants were failing to respond to inquiries regarding voter verification in a timely manner, and that they should be required to respond using "any and all reasonably available information in Defendants' custody." *See* ECF 1 at ¶¶ 46, 52, 61.[1] Defendants never

---

[1] Notably, while Plaintiffs' motion to enforce the settlement agreement in this case asks that this Court direct DHS to restore the "bulk upload function in SAVE" and "the ability to search [SAVE] with Social Security Numbers," ECF 32 at 12, neither of these functions were specifically mentioned or requested as prayers for relief in Plaintiffs' complaints. *See* ECF 1 at 15-16, ECF 29 at 24.

answered the complaint, filing unopposed or consent extensions to respond on December 9, 2024, ECF 8, February 5, 2025, ECF 15, May 15, 2025, ECF 19, July 15, 2025, ECF 23, and September 11, 2025, ECF 25.

In May 2025, DHS and SSA entered into an "agreement to overhaul the SAVE system," purporting to authorize SSA to share its records with DHS for use in the SAVE system for the first time since the system was launched in 1986, and to enable bulk searches of SAVE using Social Security numbers (SSNs). *LWV*, 2026 WL 1784297, at *6. DHS launched an overhauled version of SAVE that same month. *Id.*

In September 2025, a group of plaintiffs including proposed *amici* filed their initial complaint,[2] challenging the SAVE overhaul as unlawful. *Id.* at *6; see also* Complaint, *LWV*, No. 25-cv-3501, ECF 1 (D.D.C. Sep. 30, 2025), https://perma.cc/S7DB-MHBJ (challenging the SAVE overhaul as substantively and procedurally unlawful under the Administrative Procedure Act, Privacy Act, Social Security Act, and U.S. Constitution, and as *ultra vires*). After the *LWV* plaintiffs

---

[2] The plaintiffs in the *LWV* case filed an amended and supplemental complaint on January 21, 2026. *LWV*, 25-cv-3501, ECF 61 (Jan. 21, 2026), https://perma.cc/L5NR-6YK6. The amended and supplemental complaint asserted similar claims against the SAVE overhaul, but omitted some claims about broader DHS data sharing practices not relevant to this case, and involved a slightly different group of plaintiffs. *See id.* The amended complaint added the League of Women Voters of Texas as an additional plaintiff that was not a party to the suit as originally filed; it also omitted class action claims and class representatives that had previously been party to the suit as originally filed. *See id.* The proposed *amici* are a subset of the plaintiffs in both the original and amended complaint.

sought preliminary relief, the court issued an opinion on November 17, 2025, stating it was "troubled by the recent changes to SAVE" and that it "doubt[ed] the lawfulness of the Government's actions," but declined to issue preliminary relief because in the court's view proposed *amici* had "not demonstrated irreparable injury" on the record before it. Preliminary Injunction Op., *LWV*, ECF 55, at 1 (Nov. 17, 2025). The court later granted the State of Texas's motion to intervene as a defendant in the case under Federal Rule of Civil Procedure 24(a), based on its interest in using the modified "SAVE system for citizenship verification." Order, *LWV*, ECF 86, at 1 (Apr. 6, 2026). The state Plaintiffs in this case never moved to intervene in *LWV*.

On November 28, 2025, Plaintiffs in this case filed an amended complaint adding Iowa, Indiana, and Ohio as Plaintiffs, ECF 29, and, later the same day, a motion to dismiss based on a settlement agreement between the parties. ECF 30. Despite being on notice DHS's SAVE changes were being challenged as unlawful, and, indeed, that another federal district court judge signaled were likely unlawful, Defendants sought to enter into a settlement agreement in this case purporting to bind them to operate the overhauled SAVE system. *See* ECF 30-1, ¶ 10 (describing overhauled SAVE capabilities).[3] To the best of proposed *amici*'s knowledge based

---

[3] The proposed settlement agreement was the first time that the bulk upload function and Social Security Number integration were specifically placed at issue in this case.

on the public docket in this case, neither Plaintiffs nor Defendants alerted this court to the pending litigation in *LWV*, or to the *LWV* court's November 17 decision calling the SAVE overhaul's legality into question, prior to this Court's December 1, 2025 order dismissing the case and approving the settlement agreement. ECF 31. Notably, the settlement agreement states, "Nothing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, *or with any federal statute* in effect at the time of such performance." ECF 30-1, ¶ 17 (emphasis added).

On December 1, 2025, this Court entered a two-page order granting Plaintiffs' unopposed motion to dismiss, dismissing the case with prejudice, and retaining "jurisdiction over this case for a period of twenty years from the date of [this] order for the purpose of enforcement of the parties' settlement agreement," which the Court "approved" and "incorporated by reference" in its order. ECF 31. Prior to entry of this order, there was no adversarial litigation in this Court, DHS did not produce any administrative record, and the parties did not engage any dispositive motion briefing addressing the lawfulness of the overhauled SAVE system. Nor did the Court's December 1, 2025 order purport to resolve that unbriefed and unpresented legal issue. *See* ECF 31.

5

On June 22, 2026, after DHS and SSA produced voluminous administrative records and the parties engaged in extensive dispositive motion briefing, the court in *LWV* granted summary judgment to proposed *amici* on their statutory and APA claims, finding that "there can be no question that the modified SAVE system violates" the Social Security Act, *LWV*, 2026 WL 1784297, at *20, that DHS and SSA "clearly violated the Privacy Act's non-disclosure bar by disclosing SSA records to DHS and SAVE users (including states) without the consent of the Plaintiffs' members," *id.* at *26, that their belated publication of applicable System of Record Notices and preordained response to public comments violated the APA's procedural requirements, *see id.* at *28, and that the changes to the SAVE system were arbitrary and capricious, *see id.* at *28-29. On all those bases, the *LWV* court vacated the changes to the SAVE system. *See id.* at *35. The court further denied the federal defendants' and Texas's motions to dismiss. *See id.*

On June 30, 2026, Plaintiffs filed the motion at issue here, asking this Court to order DHS (but not SSA, which is not a party to this case) to restore the overhauled SAVE system despite the June 22 order in *LWV*. ECF 32.

## ARGUMENT

This Court should deny Plaintiffs' motion to enforce the settlement agreement, for a number of reasons. First, the settlement agreement was explicit that it did not obligate the government to undertake actions that violate federal law, ECF 30-1 ¶

17, and a decision from another court clarifying Defendants' legal obligations does not result in Defendants breaching their settlement obligations in this case. Second, the order in the *LWV* case involves parties and legal issues that were never at issue in the settlement agreement in this case, and the Plaintiffs here cannot claim that that settlement agreement imposes obligations on entities not a party to it, or resolves legal issues that were never raised or litigated in this Court.

Ultimately, while Plaintiffs in this case may disagree with the opinion in *LWV*, this Court should decline to entertain their emergency collateral attack on that decision. Notably, Plaintiffs in this case have never sought to intervene in the *LWV* case to defend their view of the law. *Compare* ECF 32 with *LWV*, 25-cv-3501, ECF 43 (Oct. 27, 2025), https://perma.cc/U87Y-UDEZ (emergency motion to intervene by state of Texas); ECF 86 (Apr. 6, 2026) (granting Texas leave to intervene); ECF 97 (Apr. 23, 2026), https://perma.cc/84NX-MG5D (Texas's motion to dismiss *LWV* plaintiffs' claims). Fortunately for Plaintiffs, the government apparently is seeking to vindicate its ability to operate the SAVE system as Plaintiffs contemplate, having noticed an appeal of the *LWV* decision to the D.C. Circuit even before Plaintiffs' motion here. *See LWV*, ECF 113 (June 25, 2026), https://perma.cc/AHV8-DGJH. And the government has also informed counsel for *amici* that they plan to seek a stay of the *LWV* decision from the district court. Ex. 1, Att. A. Those pending proceedings in the District of Columbia District Court and D.C. Circuit, with due consideration

7

to the lengthy opinion, extensive merits briefing, and voluminous administrative record, are the proper vehicle for challenging the *LWV* court's conclusions.[4]

## I. DHS has not breached the settlement agreement by complying with the order in LWV

Plaintiffs claim that Defendants have "breached" the settlement agreement in "several material respects by disabling several critical functionalities of the SAVE system." ECF 32, at 1. But "[a] consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law," including due to intervening "decisional law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992). That is because the "United States" cannot be "bound" by an "agreement to do or cause to be done what the law does not sanction or permit." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990) (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408-409 (1917)); *see also Keith v. Volpe*, 118 F.3d 1386, 1393 (9th Cir. 1997) (parties to a consent decree "c[annot] agree to terms which would exceed their authority") (collecting cases).

No court would (or could) approve a settlement agreement that *required* a party to behave in a manner which was already unlawful at the time the parties

---

[4] Alternatively, this Court could release the parties from the settlement agreement and allow Plaintiffs to resume pursuing their underlying claims.

entered it.[5] And the settlement agreement is itself explicit on its face that it does not require DHS to take actions "inconsistent with . . . any federal statute." ECF 30-1, ¶ 17.

Indeed, as Defendants' counsel *in this case* has insisted in a third case about SAVE, "the United States cannot contract around legal obligations imposed by federal statutes or the Constitution"; nor can it use a settlement to agree to engage in illegal conduct. Defs.' Reply in Supp. of MTD, *Texas v. Noem*, No. 4:24-cv-49-DC-DF, ECF 16 at 3 (W.D. Tex. Feb. 12, 2026), https://perma.cc/VR4C-593B. As the Department of Justice has previously stated when analogous conflicts between settlements and judicial orders have arisen, where a settlement agreement explicitly limits the government's obligation to perform "to the extent authorized by law," the government is "not responsible for" ostensibly breaching the settlement agreement if "third parties su[e]" the agencies and successfully argue that terms in the settlement agreement violate other laws. Defs.' Opp. to Pls.' Mot. For Prelim. Injunction, *Defense Distributed v. Dep't of State*, 1:18-cv-637, ECF 155 at 18 (W.D. Tex. May 12, 2021); *see also Washington v. Dep't of State*, 420 F. Supp. 3d 1130 (W.D. Wash. 2019) (vacating agency action contemplated by settlement in W.D. Tex. action).

---

[5] Nor, or course, could a party be expected to comply with a settlement agreement after legal changes that rendered previously lawful conduct contemplated by the settlement unlawful.

Here, the particular steps that DHS and SSA took to overhaul SAVE violated a number of federal statutes, *LWV*, 2026 WL 1784297, at *20-30, and the settlement agreement with DHS in this case, by its own terms, cannot bind DHS to violate those laws. That conclusion is reinforced by the fact that the *LWV* decision found the SAVE overhaul to be unlawful on the basis of a variety of legal deficiencies never presented to or litigated in this Court. This Court should not construe the settlement agreement to impose unlawful obligations on DHS.

Reaching a contrary result would incentivize collusion in which aligned federal and state entities could lock in agreements to perform unlawful conduct while evading meaningful judicial review of that conduct. For example, in 2024, the state of Texas sued the Department of Labor, challenging (ultimately successfully) a rule which substantially increased the number of people entitled to overtime compensation. *See Texas v. Dep't of Labor*, 756 F. Supp. 3d 361 (E.D. Tex. 2024). If, hypothetically, the state of California had read the writing on the wall and anticipated the result, California could have sued DOL for non-enforcement of its overtime policy and, with the cooperation of the federal government, raced Texas to a settlement requiring the federal government to enforce the standards challenged by Texas. Under the view espoused by Plaintiffs, such a settlement would displace any decision by the court considering Texas's challenge, despite the fact that the settlement would not reflect any court judgment concerning the legality of the

10

challenged regulation. Such gamesmanship is improper and should not be incentivized by this Court. *Cf. LWV*, 2026 WL 1784297, at \*34 (noting it is "[not] apparent that the Federal Defendants having entered a consent decree purportedly barring the very relief sought in this litigation while it was ongoing is consistent with the equitable considerations of clean hands, 'good faith,' and the prevention of 'forum shopping'") (quoting *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972, 979 (3d Cir. 1988), *aff'd* 493 U.S. 182 (1990)).[6]

## II.    The settlement agreement cannot justify the relief Plaintiffs seek

Even if this Court believed that it could order DHS to take actions that the *LWV* court already found violated multiple laws, the relief Plaintiffs seek is improper.

Plaintiffs ask this Court to order "Defendants to immediately . . . restore . . . the ability to search [SAVE] with Social Security Numbers, including last-four-digits

---

[6] Nor is it clear what limiting principle would attach to Plaintiffs' approach, under which federal and state entities could freely evade the U.S. Constitution and federal law by consent decree. The hypothetical above involves competing orders from federal courts; however, if a settlement agreement could trump a party's legal obligations, it is also not difficult to imagine a situation in which the legislative power is implicated as well, if a party were to enter a rapid settlement with the federal government in advance of anticipated federal legislation, purporting to bind the government to a course of action that would be rendered unlawful by statute. Such a result would run headlong into the rule that "when Congress changes the law underlying a judgment awarding prospective relief, that relief is no longer enforceable to the extent it is inconsistent with the new law." *Miller v. French*, 530 U.S. 327, 347 (2000).

11

Social Security Numbers." ECF 32, at 12. But this capability was enabled by data-sharing from the *Social Security Administration*, which is not a party to this case, *see*, *e.g*, *LWV*, 2026 WL 1784297, at *6 (describing a data sharing agreement between SSA and DHS and a modification to an SSA system of records to enable the SAVE system to accept queries based on Social Security Numbers). The *LWV* court set aside those changes made by SSA as unlawful, s*ee id.* at *35, and SSA is no longer permitted to share the Social Security records that the Plaintiffs are demanding access to. Counsel for SSA has confirmed to counsel for proposed *amici* that after the *LWV* court's decision, "from the SSA side, the connection used for the data-sharing from SSA systems to SAVE has been suspended, and that the vacated [System of Record Notice]'s Federal Register notice has been removed from SSA's webpage for SORNs." Declaration of Aman George, attached as Exhibit 1, at Attachment A.

Indeed, to share such records, DHS and SSA must comply with the Privacy Act, *see* 5 U.S.C. § 552a, including its requirements regarding System of Records Notices ("SORNs"), *see id.* § 552a(e)(4). And in *LWV*, the court explicitly "set[] aside and vacate[d] the 2025 DHS and SSA SORNs as unlawful." 2026 WL

1784297, at *35.[7] Thus, the relief Plaintiffs seek here would require this Court to issue an order directing a *non-party*—SSA—to violate the Privacy Act.

But SSA is not a defendant in this case nor a party to the settlement agreement, and the Court "may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated." *U.S. v. Robinson*, 83 F.4th 868, 879 (11th Cir. 2023) (citing *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 436-37 (1934)). Plaintiffs' motion runs directly contrary to this foundational principle, as this Court may not order non-party SSA to resume the data-sharing that was set aside in *LWV*, which would be necessary for DHS to restore the Social Security Number functionality Plaintiffs demand.

Moreover, the *LWV* court found that the SAVE overhaul was not only substantively unlawful, but procedurally deficient, because the SAVE changes were made without meaningful notice and comment as required by the APA and Privacy Act. *LWV*, 2026 WL 1784297, at *26-28. Agencies are required to address "vital relevant or significant" comments on their proposals. *Hewitt v. Comm'r of Internal Revenue Serv.*, 21 F.4th 1336, 1343 (11th Cir. 2021) (quotation and citation omitted).

---

[7] By vacating DHS's and SAVE's modifications to SAVE and the accompanying SORNs, the court in *LWV* rendered the "challenged agency action[s] 'void.'" *Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021) ("Vacatur [of an agency action] retroactively undoes or expunges a past [agency] action."). That relief is not limited to the plaintiffs in *LWV*, but rather applies to the agency actions themselves.

13

The purpose of the APA's procedural protections "is to 'give[ ] affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes' while 'afford[ing] the agency a chance to avoid errors and make a more informed decision.'" *Id.* (quoting *Azar v. Allina Health Servs.*, 587 U.S. 566, 582 (2019). These procedural requirements attach to agency action even when such action has been required by law. *Cf., e.g.*, *U.S. Steel Cop. v. U.S. Envt'l Prot. Agency*, 595 F.2d 207, 213 (5th Cir. 1979) ("[T]he mere existence of deadlines for agency action, whether set by statute or court order, does not in itself constitute good cause" for exception from the APA's notice and comment requirements).

Even if this Court believes that the settlement agreement here ultimately required DHS to make some of the changes Plaintiffs seek, it surely did not require that DHS do so in a way that circumvented DHS's procedural obligations under the APA and Privacy Act. The *LWV* court ordered the Defendants to "'comply with the procedural requirements for new agency action,'" and making further revisions to SAVE "only *after* engaging in notice and comment." 2026 WL 1784297, at *29 (quoting *Dep't of Homeland Security v. Regents of the Univ. of California*, 591 U.S. 1, 21 (2020)). Nothing in the settlement agreement purported to relieve Defendants of these obligations, which would be violated if this Court granted Plaintiffs' request that "Defendants … immediately" restore the SAVE functionality that was procedurally deficient in its creation. ECF 32, at 12.

14

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion to enforce the settlement agreement.

Dated: July 1, 2026

/s/ Gerald E. Greenberg
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
DANIEL R. WALSH
Florida Bar No. 0124282
dwalsh@gsgpa.com
GELBER SCHACHTER &
GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

Lauren C. Bingham
Florida Bar No. 105745
LBingham@citizensforethics.org
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
(202) 408-5565

Respectfully submitted,

Aman T. George*
D.C. Bar No. 1028445
ageorge@democracyforward.org
DEMOCRACY FORWARD FOUNDATION
P.O. BOX 34553
WASHINGTON, D.C. 20043
(202) 448-9090

*Counsel for Proposed Amici*

*pro hac vice application forthcoming

15

**Exhibit 1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**State of Florida** and the **Florida Department of State**, et al.,

 Plaintiffs,

 v.

**Department of Homeland Security** and **Alejandro Mayorkas**

 *Defendants*.

Case No. 3:24-cv-509-TKW-HTC

**Declaration of Aman T. George**

I, Aman T. George, declare as follows:

1. I am an attorney at the Democracy Forward Foundation. I am an attorney of record for proposed *amici* League of Women Voters and Electronic Privacy Information Center in the case *League of Women Voters v. U.S. Department of Homeland Security,* 25-cv-3501 (D.D.C.).

2. I am also a counsel for LWV and EPIC in their motion for leave to file a brief as *amici curiae* in the above-captioned case. I submit this declaration in support of that motion.

3.      Attached as Attachment A to this declaration is a true and correct copy of recent email correspondence between the counsel for both parties in the *LWV v. DHS* case.

4.      I am over eighteen years of age, of sound mind, and competent to make this declaration. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2026

_____

Aman Tewari George

**Attachment A**



**Aman George <ageorge@democracyforward.org>**

---

## LWV v. DHS, 25-cv-3501-SLS (DDC)

---

**Azrak, Cesar E (CIV)** <Cesar.E.Azrak@usdoj.gov>       Wed, Jul 1, 2026 at 9:50 AM
To: Nikhel Sus <nsus@citizensforethics.org>, "Pezzi, Stephen (CIV)" <Stephen.Pezzi@usdoj.gov>
Cc: John Hill <jhill@citizensforethics.org>, Aman George <ageorge@democracyforward.org>, Lauren Bingham
<lbingham@citizensforethics.org>, Hanna Hickman <hhickman@democracyforward.org>, Mark Samburg
<msamburg@democracyforward.org>, Jon Sherman <jsherman@fairelectionscenter.org>, Michelle Kanter Cohen
<mkantercohen@fairelectionscenter.org>, Emily Davis <edavis@fairelectionscenter.org>, "rfein@democracyforward.org"
<rfein@democracyforward.org>, Will Wassdorf <will.wassdorf@oag.texas.gov>

Nik and team,

Thanks for your patience. I have been informed that, from the SSA side, the connection used for the data-sharing from
SSA systems to SAVE has been suspended, and that the vacated SORN's Federal Register notice has been removed
from SSA's webpage for SORNs. And from the DHS side, I have been informed that the ability to search by U.S. passport
number or driver's license number was never implemented in SAVE in the first place; that the ability to search by full or
partial SSN (including in bulk) has been disabled; and that users cannot initiate a SAVE search for a natural-born citizen
now that the ability to search by SSN has been disabled.

Further—and with apologies for the short notice—I want to flag for you, pursuant to Local Civil Rule 7(m), that later today,
we intend to seek a stay of the Court's vacatur order pending the resolution of Defendants' ongoing appeal of that order.
Will you oppose our motion? If you would kindly let me know as soon as you can, we'll report your position in our papers.

Thanks,

Cesar

—

**Cesar E. Azrak**

Trial Attorney

United States Department of Justice

Civil Division, Federal Programs Branch

cesar.e.azrak@usdoj.gov

Office: (202) 305-0693

Cell: (202) 538-3491

---

**From:** Azrak, Cesar E (CIV)
**Sent:** Monday, June 29, 2026 5:35 PM
**To:** 'Nikhel Sus' <nsus@citizensforethics.org>; Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Cc:** John Hill <jhill@citizensforethics.org>; Aman George <ageorge@democracyforward.org>; Lauren
Bingham <lbingham@citizensforethics.org>; Hanna Hickman <hhickman@democracyforward.org>; Mark
Samburg <msamburg@democracyforward.org>; Jon Sherman <jsherman@fairelectionscenter.org>;

Michelle Kanter Cohen <mkantercohen@fairelectionscenter.org>; Emily Davis <edavis@fairelectionscenter.org>; rfein@democracyforward.org; Will Wassdorf <will.wassdorf@oag.texas.gov>
**Subject:** RE: [EXTERNAL] LWV v. DHS, 25-cv-3501-SLS (DDC)

Hi Nik,

Nice to meet you.  I'm Cesar Azrak, a colleague of Steve's covering this case for the week in his absence.  I'm still getting up to speed on the various issues here, and I've reached out to our clients on their compliance efforts, but I'm not in a position to provide answers regarding compliance by today.  I'll endeavor to share responses as soon as I can, and Steve will no doubt be in further touch upon his return.

Best,

Cesar

—

**Cesar E. Azrak**

Trial Attorney

United States Department of Justice

Civil Division, Federal Programs Branch

cesar.e.azrak@usdoj.gov

Office: (202) 305-0693

Cell: (202) 538-3491

---

**From:** Nikhel Sus <nsus@citizensforethics.org>
**Sent:** Friday, June 26, 2026 4:23 PM
**To:** Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Cc:** John Hill <jhill@citizensforethics.org>; Aman George <ageorge@democracyforward.org>; Lauren Bingham <lbingham@citizensforethics.org>; Hanna Hickman <hhickman@democracyforward.org>; Mark Samburg <msamburg@democracyforward.org>; Jon Sherman <jsherman@fairelectionscenter.org>; Michelle Kanter Cohen <mkantercohen@fairelectionscenter.org>; Emily Davis <edavis@fairelectionscenter.org>; rfein@democracyforward.org; Will Wassdorf <will.wassdorf@oag.texas.gov>; Azrak, Cesar E (CIV) <Cesar.E.Azrak@usdoj.gov>
**Subject:** Re: [EXTERNAL] LWV v. DHS, 25-cv-3501-SLS (DDC)

Steve,

A few responses to your email below:

1. Thank you for clarifying that "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches have all been disabled" in response to the Court's June 22 order. Of course, none of that information was previously available to us or the public, and, as far as we are aware, the federal Defendants have not publicly described any steps they have taken to comply with the Court's order. To the contrary, as noted in my email below, USCIS posted an update on its website on June 23 -- the day after the Court's ruling -- about new "enhancements to the SAVE program," including to SAVE's "bulk case closure capabilities." This was not "outdated language," as you incorrectly state below, but rather *new*

language posted *after* the Court's decision that gave us reasonable grounds to inquire about the steps Defendants had taken to comply with the Court's order.

2. Regarding the third bullet in my email below, you stated you "do not understand what (if anything) that has to do with the Court's order, which does not prohibit use of the SAVE system in general." While I think this point should be obvious, I will explain further: as the federal Defendants acknowledge, the Court's June 22 order requires DHS to, among other things, undo "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches." Yet the June 24 FEMA Notice of Funding Opportunity (NOFO) document I linked below -- which was issued two days after the Court's order -- imposes the following grant condition: "each state and high-risk urban area election jurisdiction must … [u]tilize the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements (SAVE) system to verify the citizenship **of all individuals in the state voter registration database within 120 days** of accepting the grant award." It is our understanding that it would be impossible to perform these functions using the un-modified version of SAVE, which, as you know, did not allow SAVE users to run bulk searches of statewide voter registration lists using voters' SSNs. However, we appreciate your subsequent clarification that Defendants have in fact disabled SAVE's bulk upload and search-by-SSN features in response to the Court's June 22 order. In light of that representation, our understanding is that the June 24 NOFO's SAVE-related grant condition would be impossible to fulfill and cannot be enforced consistent with the Court's June 22 order. Please let us know if our understanding is incorrect.

3. My initial email asked Defendants to explain what steps they have taken and will be taking to comply with the Court's June 22 order. You responded that the federal Defendants have disabled "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches." But the Court's order required Defendants to take more than just those actions. Specifically, the Court held unlawful, vacated, and set aside three things: (1) DHS's October 2025 modified SORN for SAVE, (2) SSA's November 2025 modified SORN for the SSA Master File, and (3) the SAVE "modified system" described in DHS's October 2025 modified SORN for SAVE. *See* ECF No. 112. Your email did not describe any steps the federal Defendants have taken to effectuate, memorialize, or communicate within the government the vacatur of the two SORNs, nor have we seen any public rescission of those SORNs published in the Federal Register or on the agencies' websites. This omission is significant because both SORNs established new routine uses that purport to broadly authorize inter-agency disclosures between DHS, SSA, and other agencies. *See* ECF No. 113 at 13. If those modified SORNs and routine uses remain in place, Defendants are not in compliance with the Court's June 22 order.

4. Similarly, the June 22 order requires the federal Defendants to undo the SAVE "modified system" described in DHS's October 2025 modified SORN for SAVE. *See* ECF No. 112. Undoing that modified system requires more than merely disabling "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches." It also requires Defendants to undo various other changes outlined in DHS's October 2025 SORN, such as permitting SAVE searches using passport numbers and driver's license numbers, including U.S. citizens among the categories of individuals covered by SAVE, and SAVE's integration of social security data, state driver's license data, and U.S. passport data. Again, your email does not describe any efforts to comply with this aspect of the Court's order.

In light of the additional information I provided in points 3 and 4 above, please explain in writing by no later than 5pm ET on Monday, June 29, all steps Defendants have taken to comply with the Court's June 22 order, apart from merely disabling "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches."

Thank you.

Nik

On Thu, Jun 25, 2026 at 7:34 PM Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov> wrote:

> Nik,
>
> Your concerns are unfounded. I have been informed that SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches have all been disabled. In addition, I have personally heard from attorneys representing multiple States that those States have been unable to use those features this week.
>
> None of your three bullet points "indicate the agency continues to operate the modified SAVE system." As for your first two points, the Court's order does not require that every statement on every government website be immediately updated. I have forwarded your examples of possibly outdated language to USCIS. If it is appropriate to update the

language on the website, I am sure they will do so at some point.  As for your third point, I do not understand what (if anything) that has to do with the Court's order, which does not prohibit use of the SAVE system in general.

FYI, I will be out of the office on leave, starting tomorrow, through Monday, July 6.  If you have any further questions, please send to me but also make sure to include Cesar Azrak (copied here).

Thanks,

**Stephen M. Pezzi** | Chief Litigation Counsel

United States Department of Justice

Civil Division - Federal Programs Branch

(202) 598-3240 | stephen.pezzi@usdoj.gov

---

**From:** Nikhel Sus <nsus@citizensforethics.org>
**Sent:** Thursday, June 25, 2026 1:53 PM
**To:** Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>; Will Wassdorf <will.wassdorf@oag.texas.gov>
**Cc:** John Hill <jhill@citizensforethics.org>; Aman George <ageorge@democracyforward.org>; Lauren Bingham <lbingham@citizensforethics.org>; Hanna Hickman <hhickman@democracyforward.org>; Mark Samburg <msamburg@democracyforward.org>; Jon Sherman <jsherman@fairelectionscenter.org>; Michelle Kanter Cohen <mkantercohen@fairelectionscenter.org>; Emily Davis <edavis@fairelectionscenter.org>; rfein@democracyforward.org
**Subject:** [EXTERNAL] LWV v. DHS, 25-cv-3501-SLS (DDC)

Counsel,

We're writing to ascertain the steps Defendants have taken and will be taking to comply with the Court's June 22 memorandum opinion and order in the above-referenced case. *See* ECF Nos. 111, 112. As you know, the Court held unlawful, vacated, and set aside the SAVE "modified system" and corresponding system of records notices. And the Court explained that "[s]etting aside an agency action means 're-establish[ing] the status quo absent the unlawful agency action.'" ECF No. 111 at 74 (quoting *Las Ams. Immigrant Advoc. Ctr. v. DHS*, 783 F. Supp. 3d 200, 233 (D.D.C. 2025)). It is not clear to Plaintiffs what actions, if any, Defendants have taken to comply with the Court's order. Moreover, DHS has taken several actions *after* the Court's June 22 ruling which indicate the agency continues to operate the modified SAVE system, including the following:

- On June 23, USCIS posted an update on its website titled "SAVE Enhances Case Processing," which described, among other things, updates to SAVE's "bulk case closure capabilities."
- The SAVE user reference guide now indicates that it was "last reviewed/updated: 06/23/2026," yet continues to include sections 8-10 which deal with SSN queries and bulk uploads.
- On June 24, FEMA published the Fiscal Year 2026 Homeland Security Grant Program Notice of Funding Opportunity, which states that "each state and high-risk urban area election jurisdiction must … [u]tilize the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements (SAVE) system to verify the citizenship of all individuals in the state voter registration database within 120 days of accepting the grant award," and must also "[u]tilize the SAVE system, or another authorized government system, to verify U.S. citizenship for any person working at a polling place in any capacity, or operating any election system in the jurisdiction, including temporary agency workers and vendors who work on or with election systems."

Can the Federal Defendants and Texas please provide an explanation by 3pm ET tomorrow (Friday, June 26) of what steps, if any, they have taken and will be taking to comply with the Court's order? We are happy to schedule a call to discuss if needed.

Thanks,

Nik

--

**Nikhel Sus**
Chief Counsel | Citizens for Responsibility and Ethics in Washington (CREW)
Office: (202) 408-5565

nsus@citizensforethics.org | www.citizensforethics.org

--

**Nikhel Sus**
Chief Counsel | Citizens for Responsibility and Ethics in Washington (CREW)
Office: (202) 408-5565

nsus@citizensforethics.org | www.citizensforethics.org