**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

STATE OF FLORIDA *et al.*,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY *et al.*,

        Defendants.

No. 3:24-cv-00509-TKW-HTC

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

**INTRODUCTION**

Unfortunate events for which neither party is responsible have resulted in the present situation, which may be resolved or otherwise rendered moot in short order. Plaintiffs seek an order requiring Defendants to comply with their obligations under a settlement agreement over which this Court has retained jurisdiction. But as Plaintiffs concede, the sole reason that Defendants cannot fully comply with those obligations is that another federal district court in the District of Columbia has entered an order preventing such performance. Defendants have appealed that order, and they have already moved for a stay of the order pending appeal. Unless Defendants obtain relief from the district court, Defendants will expeditiously request a stay pending appeal from the D.C. Circuit. Plaintiffs' motion could thus be rendered moot very shortly. Defendants thus respectfully request that the Court defer ruling on Plaintiffs' motion until stay proceedings in the District of Columbia have been completed.

Moreover, Defendants are not in violation of the settlement agreement. The agreement expressly provides that it does not impose duties or obligations that are inconsistent with federal statutes, and a binding interpretation of relevant federal statutes by a federal district court satisfies that requirement. A party also does not breach its obligations under a settlement agreement by refusing to violate a court order. In any event, however, the Court should not grant Plaintiffs' motion because settled principles of equity strongly weigh against such relief. Defendants thus respectfully request that the Court defer ruling on Plaintiffs' motion until stay proceedings in the District of Columbia have concluded, or in the alternative, deny Plaintiffs' motion.

**BACKGROUND**

The plaintiff states filed this suit seeking to compel the U.S. Department of Homeland Security ("DHS") to improve and modernize its Systematic Alien Verification for Entitlements ("SAVE") system. In October and November 2025, DHS and the Social Security Administration ("SSA")

published System of Records Notices ("SORNs") to modify their systems to implement the improvements and modernizations sought by Plaintiffs. *See* DHS, Notice of Modified System of Records, 90 Fed. Reg. 48,948 (Oct. 31, 2025); SSA, Notice of Modified System of Records, 90 Fed. Reg. 50,879 (Nov. 12, 2025).

The parties executed a Settlement Agreement in November 2025 resolving this case. *See* Settlement Agreement, ECF No. 30-1. The Court retained jurisdiction to enforce the agreement for twenty years, *see* Order, ECF No. 31. The Settlement Agreement requires Defendants, *inter alia*, to ensure that SAVE has the capability to (1) process bulk upload verification requests by States to verify the citizenship of particular State residents so that SAVE users do not need to input verification requests one-by-one, (2) integrate with the Social Security Administration to allow such verification requests to use last-four-digits Social Security Numbers ("SSNs") and full SSNs as a non-DHS enumerator for the identification of these residents. *See* Settlement Agreement ¶¶ 10.b-d. It is undisputed that as of this month, no plaintiff had alleged that Defendants were in breach of any of their obligations under the Settlement Agreement. *See* Pls.' Mot. at 4 ("From December 2025 to June 2026, Plaintiffs and Defendants performed their duties and obligations under the settlement agreement. As relevant here, Defendants ensured that the SAVE system had a bulk upload function and was searchable via Social Security Numbers and last-four-digit Social Security Numbers.").

Last week, the U.S. District Court for the District of Columbia issued a memorandum opinion that "sets aside and vacates" (1) the October 2025 Department of Homeland Security Notice of a Modified System of Records for the SAVE system of records, Notice of a Modified System of Records, 90 Fed. Reg. 48,948 (October 31, 2025); (2) the November 2025 Social Security Administration Notice of a Modified System of Records for the Master Files of Social Security Number Holders and Social Security Number Applications, Notice of a Modified System of Records, 90 Fed. Reg. 50,879 (November 12, 2025); and (3) the SAVE "modified system" described in the

October 2025 Department of Homeland Security Notice of a Modified System of Records for the SAVE system of records. Notice of a Modified System of Records, 90 Fed. Reg. at 48,948 (October 31, 2025). *See* Mem. Op. at 75, *League of Women Voters v. DHS*, No. 1:25-cv-03501-SLS (June 22, 2026) (attached as Ex. 1). As Plaintiffs' motion notes, "[t]he federal government defended the modifications to the SAVE program in its [merits] briefing, noting those changes were 'as required by the judicially enforceable settlement agreement in *Florida*.'" Pls.' Mot. at 5; *see* Mem. Supp. Defs.' Mot. for Summ. J. at 44-61, ECF No. 77-1 ("Defs.' MSJ"), No. 1:25-cv-003501-SLS (Apr. 2, 2026). Defendants also specifically asked the Court not to issue any form of relief that would interfere with the Settlement Agreement in this case. *See id.* at 63-64.

Despite Defendants' vehement objections, however, the U.S. District Court for the District of Columbia set aside and vacated DHS's improvements and modernizations. Defendants have promptly appealed the district court's decision to the U.S. Court of Appeals for the District of Columbia Circuit, *see* Notice of Appeal, ECF No. 113, No. 1:25-cv-003501-SLS (June 25, 2026). Yesterday, Defendants moved the district court for a stay of its vacatur order pending appeal. *See* Mot. to Stay, ECF No. 116, No. 1:25-cv-003501-SLS (July 1, 2026). The district court promptly entered an expedited briefing schedule that concludes on July 7. *See id.*, Minute Order (July 2, 2026).

Unless Defendants obtain relief from the district court, Defendants will expeditiously request a stay pending appeal from the D.C. Circuit. Thus, although Defendants must comply with the vacatur order while it remains in effect, they are working promptly to stay the effect of the order and fully return the SAVE system to the same modernized functionality it had before this recent adverse decision.

On June 30, Plaintiffs filed an emergency motion to enforce the settlement agreement. Emergency Mot. to Enforce Settlement Agreement, ECF No. 32 ("Pls.' Mot."). The same day, this Court entered an order directing Defendants, by noon Central Time today, "to respond to the

emergency motion and explain why they are not in violation of the settlement agreement and why the Court should not require them to comply with the settlement agreement by immediately restoring (1) the bulk upload function in SAVE and (2) the ability to search with Social Security Numbers in SAVE." Order Requiring Expedited Response, ECF No. 33.

On July 1, the League of Women Voters and Electronic Privacy Information Center filed an amicus brief. *See* Brief of Amici Curiae League of Women Voters and Electronic Privacy Information Center, ECF No. 37-1 ("amicus brief"). On July 2, the Court extended Defendants' time to respond to Plaintiffs' motion until 5:00pm Central Time today and directed Defendants to "address the arguments in the amicus brief." Order, ECF No. 39.

## ARGUMENT

**I.     Considerations of Party and Judicial Economy Strongly Favor Deferring a Ruling on Plaintiffs' Motion Until Stay Proceedings in the D.C. Circuit Have Been Completed.**

In light of the ongoing litigation in the District of Columbia to restore the status quo ante, Defendants respectfully request that the Court defer ruling on Plaintiffs' motion to enforce the Settlement Agreement until stay proceedings in *League of Women Voters* are fully resolved. Defendants have acted in good faith under the Settlement Agreement by vigorously defending the legality of DHS's improvements and modifications of SAVE, by expeditiously appealing the district court's decision, and by seeking a stay of that decision.

Defendants expect to prevail on their arguments seeking a stay of the *League of Women Voters* order. First, *League of Women Voters* erred in holding that the modified SAVE system is inconsistent with the Social Security Act's prohibition of disclosures of sensitive information. The relevant portion of that Act provides that "no authorized person shall disclose any such social security account number or related record." 42 U.S.C. § 405(c)(2)(C)(viii)(I). But the SAVE system does not disclose any person's SSN to the SAVE user. Nor does the SAVE system disclose any protected record related to an SSN to a SAVE user, because mere citizenship status does not meaningfully disclose the identity

4

of the person associated with any SAVE query.  Accordingly, nothing about the SAVE system runs afoul of the Social Security Act protections on which the Court relied.  Second, *League of Women Voters* erred in concluding that the disclosure of SSA data to DHS and SAVE users is inconsistent with the Privacy Act's protections against non-consensual disclosures.  Those protections are subject to "routine use" exceptions," 5 U.S.C. § 552a(a)(7); *see also id.* § 552a(b)(3) (permitting disclosure under "routine use" exceptions).  And here, *Congress itself* presumably thought the use of SSNs for citizenship-verification purposes compatible with the purposes for which SSNs are collected, because Congress has mandated that "[n]otwithstanding any other provision of Federal[] … law[] … a Federal[] … entity or official may not … in any way restrict[] any government entity or official from … receiving … information regarding the citizenship or immigration status … of any individual."  8 U.S.C. § 1373(a).

Third, *League of Women Voters* was mistaken in holding that the DHS and SSA SORNs violated the notice-and-comment requirements of the Privacy Act.  The SORNs comply with the Privacy Act's notice-and-comment requirements because "at least 30 days prior to publication of information under" 5 U.S.C. § 552a(e)(4)(D), DHS and SSA "publish[ed] in the Federal Register notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency."  (Section 552a(e)(4)(D) refers to "each routine use of the records contained in the system, including the categories of users and the purpose of such use.").  The SORNs therefore plainly comply with the requirements of the Privacy Act.  For all these reasons, Defendants are likely to prevail on the merits of their appeal.

A stay of the *League of Women Voters* vacatur decision would fully remedy all of Plaintiffs' present concerns and render moot their motion for enforcement of the settlement agreement.  Considerations of party and judicial economy thus strongly favor allowing the stay proceedings in the D.C. Circuit to play out before this Court and the parties devote significant time and resources to a matter that could shortly be rendered entirely moot.  That is especially true where, as here, the Court's

resolution of Plaintiffs' motion could well place the United States in the impossible position of being subject to two conflicting, largely irreconcilable court orders. "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1285 (11th Cir. 2021). "Comity dictates that courts should avoid rulings which may trench upon the authority of sister courts." *Id.* Such basic considerations of judicial comity are compelling here, where an order by this Court on Plaintiffs' motion would be extremely likely to create an irreconcilable conflict with an order of another federal district court.

Defendants thus respectfully request that the Court hold in abeyance its ruling on Plaintiffs' motion to enforce the Settlement Agreement until after the resolution of the stay proceedings in *League of Women Voters*.

II.     **The Amicus Brief Correctly States That Defendants Are Not in Breach of the Settlement Agreement, and That SSA Is Not a Party to This Case, But Incorrectly Argues That the *League of Women Voters* Vacatur Order Was Correct.**

      A.     **Defendants Are Not in Breach of the Settlement Agreement Because the *League of Women Voters* Vacatur Order Requires Defendants to Disable the Relevant Improvements and Modifications of the SAVE System.**

Plaintiffs allege that Defendants breached the Settlement Agreement by disabling the bulk upload function in SAVE and its ability for States to search the database with full SSNs or last-four-digit SSNs. Pls.' Mot. at 5. But as Plaintiffs concede, the *League of Women Voters* vacatur order "[holds] that the modified SAVE system violate[s] the Social Security Act and the Privacy Act of 1974 and that its establishment was arbitrary and capricious under the Administrative Procedure Act." *Id.* (citation omitted). And as the amicus brief correctly notes, *see* Amicus Brief at 8-9, the Settlement Agreement provides that "[n]othing contained" in it "shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or

6

with any federal statute in effect at the time of such performance." Settlement Agreement ¶ 17. Because it is "emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), including federal statutes, the Settlement Agreement cannot impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the *League of Women Voters* vacatur order's interpretation of the Social Security Act and Privacy Act. As explained above, Defendants vehemently disagree with that interpretation, and accordingly have moved to stay the court's decision. But absent a stay of that decision, Defendants are bound by it. Thus, granting Plaintiffs' motion would effectively impose on Defendants a duty, obligation, and requirement to perform under the Settlement Agreement in a way that is inconsistent with another court's order interpreting a federal statute. "Nothing contained" in the Settlement Agreement imposes such a duty, obligation, or requirement.[1]

Plaintiffs' motion incorrectly contends that this provision of the Settlement Agreement does not apply because "*this Court* has not held that Defendants' duties are inconsistent with the Constitution or any federal statute." Pls.' Mot. at 10 (emphasis added). But the provision is not so limited. It states instead that the Settlement Agreement may not impose a duty on Defendants that is inconsistent with federal statute in effect at the time. As explained above, the interpretation of federal statutes in the *League of Women Voters* vacatur order prevails over conflicting obligations in the Settlement Agreement.

Furthermore, the amicus brief correctly observes that a party does not breach its obligations under a settlement agreement by refusing to violate a court order. *See* Amicus Brief at 8; *see also Borup*

---

[1] The amicus brief errs, however, in contending that "the particular steps that DHS and SSA took to overhaul SAVE violated a number of federal statutes." Amicus Brief at 10. As explained, *see supra* at I, the *League of Women Voters* vacatur order was mistaken in concluding that Defendants' improvements and modifications of the SAVE system were inconsistent with the Social Security Act and the Privacy Act.

*v. W. Operating Corp.*, 130 F.2d 381, 384 (2d Cir. 1942) ("[A] promisor is excused, except in unusual circumstances, if performance becomes unlawful by a change in the law made after the contract was executed."). As Plaintiffs concede, the *League of Women Voters* vacatur order "set[s] asid[e] and vacat[es] the SAVE 'modified system' and the related SORNs." Pls.' Mot. at 5. The Fifth Circuit has explained elsewhere that "a court order may excuse a party's performance under a contractual obligation," and further explained that this excuse will not apply if a party can fulfill its contractual obligations notwithstanding a court order. *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 328 (5th Cir. 2001). But here, there is no question that the only reason Defendants cannot fulfill their terms of the settlement agreement is because of the current vacatur order in the *League of Women Voters* case. And Defendants are actively taking emergency steps to oppose that order and stay its effectiveness. There is no breach of the settlement agreement in these unique circumstances.

The amicus brief also correctly states that the SAVE system's ability to search SAVE with SSNs and last-four-digit SSNs was enabled by data shared to DHS by SSA, and that SSA is not a party to this case. Amicus Brief at 11-13. Further, the amicus brief correctly represents that under the *League of Women Voters* vacatur order and memorandum opinion, SSA may no longer share such data. However, complying with the Settlement Agreement does not require Defendants "to violate the Privacy Act." Amicus Brief at 13. Although *League of Women Voters* concluded otherwise, that conclusion is mistaken, as more fully explained below. *See infra* II.B.

Finally, although not addressed by the amicus brief, this Court lacks jurisdiction to enforce the Settlement Agreement. The Tucker Act grants the Court of Federal Claims exclusive jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States[,]" 28 U.S.C. § 1491(a)(1), and waives sovereign immunity for cases falling within its grant of jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Tucker Act therefore displaces district court jurisdiction over contract claims against the United States, as the

8

Supreme Court has recently recognized. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) (per curiam); *Dep't of Ed. v. California*, 604 U. S. 650 (2025) (per curiam). As the D.C. Circuit has stated, this preclusion of review applies even if, as here, the parties' agreement contemplates enforcement by a federal court and the district court retains jurisdiction. To conclude otherwise, the D.C. Circuit explained, "would be to violate the time-honored rule that neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014).

In any event, even if this Court had jurisdiction to enforce the agreement, it could not award the relief sought by Plaintiffs. Plaintiffs seek, in effect, specific performance of the contract they entered into against the federal government, but specific performance is not an available remedy against the United States under federal contract law. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) ("[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law."); *McLarnon v. United States*, 154 Fed. Cl. 459, 462 (2021) (explaining that "specific performance is not an available remedy" in "breach of contract claim against the United States").

**B.      The Amicus Brief Is Incorrect in Its Contentions Regarding the Procedural Obligations of the Privacy Act and Administrative Procedure Act.**

As noted above, Defendants vehemently disagree with the *League of Women Voters* vacatur order, and have appealed and sought a stay of that order. The amicus brief errs in contending that the *League of Women Voters* vacatur order was correct in concluding that that the DHS and SSA SORNs violated the notice-and-comment requirements of the Privacy Act (and by extension, the Administrative Procedure Act ("APA")). Amicus Brief at 13-14. The Privacy Act merely requires that "at least 30 days prior to publication of information under" 5 U.S.C. § 552a(e)(4)(D), the agency "publish in the Federal Register notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency." 5 U.S.C. § 552a(e)(11). (Section 552a(e)(4)(D), in turn, refers to "each routine use of

9

the records contained in the system, including the categories of users and the purpose of such use.") That is what SSA and DHS did in the challenged SORNs. The DHS SORN was published on October 31, 2025, specifying that "[n]ew or modified routine uses will be effective December 1, 2025" and specifically invited the immediate submission of comments for the agency's consideration. 90 Fed. Reg. at 48,949. Likewise, the SSA SORN was published on November 12, 2025, specifying that "new routine uses … are effective December 12, 2025" and specifically "invit[ing] public comment on the routine uses or other aspects of this SORN." 90 Fed. Reg. at 50,880. The SORNs thus plainly comply with the Privacy Act's requirements. Requiring anything further in the name of the Privacy Act improperly "impose[s] judge-made procedures in addition to the [statute]'s mandates." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 685 (2020) (cleaned up). And to the extent that the *League of Women Voters* vacatur order suggests that the APA imposes an independent notice-and-comment obligation—including an obligation to provide a written explanation or response to comments received—beyond that required by the Privacy Act, that imposition would call into question virtually every SORN publication dating back decades.

**III.** **In Any Event, the Court Should Not Enter an Order Enforcing the Settlement Agreement Under These Circumstances Because the Balance of Hardships and the Public Interest Weigh Against It.**

As explained above, Defendants are not in breach of the Settlement Agreement. But even if the Court were to disagree, it should not grant Plaintiffs' motion. An order enforcing the Settlement Agreement would be tantamount to a permanent injunction, and Plaintiffs have not satisfied the requirements for obtaining such relief. "To obtain a permanent injunction, a plaintiff must show," *inter alia*, "that the balance of hardships weighs in his favor; and . . . that a permanent injunction would not disserve the public interest." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017). Granting Plaintiffs' motion would impose a formidable hardship on Defendants by placing them in an impossible dilemma. Defendants would be faced with multiple court orders, and it would be

logically impossible to comply with both of them—virtually guaranteeing that the government would risk a violation in one or more federal courts.

Defendants remain confident that they will obtain a stay of the *League of Women Voters* vacatur order and will ultimately prevail in their appeal of that order. But again, as of today, Defendants remain bound by that order. Plaintiffs' request for this Court to issue an order directly conflicting with that order would unquestionably place Defendants in a situation in which full compliance with both orders would be logically impossible. And Defendants, the states, the federal judiciary, and the general voting public would face immediate chaos and uncertainty because of the conflicting orders. Entry of an order granting Plaintiffs' motion would thus disserve the public interest.

In addition to equitable principles, "[p]rudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders." *Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986).[2] And basic "considerations of comity require more than the usual measure of restraint" in this scenario, when an order "sought in one federal proceeding would interfere with another federal proceeding." *Common Cause v. Jud. Ethics Comm'n*, 473 F. Supp. 1251, 1253-54 (D.D.C. 1979). That is another reason not to grant Plaintiffs' motion. *See, e.g., W. Gulf Maritime Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) (holding that federal district courts have an obligation to "avoid rulings which may trench upon the authority of sister courts"); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) ("Where different outcomes would place the defendant under inconsistent legal duties, the case for the second court's not going into conflict with the first is particularly strong."); *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases."); *Carver*

---

[2] Defendants raised this same argument before the D.C. District Court. *See* Defs.' MSJ at 63–64.

*v. Knox Cnty.*, 887 F.2d 1287, 1293 (6th Cir. 1989) (noting the "intolerable situation" of a state subject to conflicting orders and explaining that "the only common sense approach" is for the courts to speak "with a single voice"); *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) ("Generally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts.").

Plaintiffs' motion provides little response to these concerns. Plaintiffs note that the *League of Women Voters* vacatur order "is not binding on this Court" and that Plaintiffs "were not parties to the D.C. proceedings and are thus not bound by the D.C. District Court's judgment." Pls.' Mot. at 10, 11 n.2. While both statements are correct, they are beside the point. The vacatur order is binding on *Defendants* as parties to the case.

No case law cited by Plaintiffs supports their request for an order enforcing the Settlement Agreement. *Stone & Webster, Inc. v. Georgia Power Co.*, 779 F.3d 614 (D.C. Cir. 2015), states only that in "determin[ing] which of two pending suits should proceed, the Supreme Court [has held] that the lower courts must be given 'an ample degree of discretion.'" *Id.* at 617 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)). *Stone & Webster* and *Kerotest* are about deciding which case goes first where two overlapping declaratory judgment actions have been filed, with a plaintiff in one action being a defendant in the other and vice versa. They have little relevance here, where Plaintiffs are not seeking a determination as to which of two overlapping declaratory judgment actions should proceed. *Emrick v. Bethlehem Steel Corp.*, 624 F.2d 450 (3d Cir. 1980), is similarly inapposite. That case involved whether employees alleging sex discrimination in violation of a consent decree entered in one court could file their claims in a different court. *Id.* at 451-52. It has minimal relevance to the present circumstances, in which Plaintiffs ask this Court to impose on the federal government an obligation to violate an order issued by another federal district court.

## CONCLUSION

Defendants respectfully request that the Court hold in abeyance its ruling on Plaintiffs' motion to enforce the Settlement Agreement until after the resolution of stay proceedings in *League of Women Voters*. In the alternative, Defendants respectfully ask the Court to deny Plaintiffs' motion.

Dated: July 2, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Daniel Riess*
STEPHEN M. PEZZI (Florida Bar No. 1041279)
Senior Trial Counsel
DANIEL RIESS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-3098
Email: daniel.riess@usdoj.gov

*Attorneys for Defendants*

13