UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| STATE OF FLORIDA AND THE FLORIDA DEPARTMENT OF STATE, ET AL., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY AND MARKWAYNE MULLIN, <br><br> *Defendants*. | Case No. 3:24-cv-509-TKW-HTC |

**MEMORANDUM IN SUPPORT OF
LEAGUE OF WOMEN VOTERS' AND ELECTRONIC PRIVACY
INFORMATION CENTER'S EMERGENCY MOTION TO INTERVENE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ...........................................................................................1

BACKGROUND ............................................................................................4

ARGUMENT ...............................................................................................11

   I.     The Motion is timely. ....................................................................11

   II.    LVW and EPIC are entitled to intervene as of right. ..................18

      A.   LVW and EPIC have an interest in the Court's enforcement order.........18

      B.   Defendants' compliance with the Court's enforcement order will impair LVW's and EPIC's interests. .......................................20

      C.   LVW's and EPIC's interests are not adequately represented by the existing parties. ....................................................................21

   III.   LWV and EPIC are entitled to permissive intervention. ...........23

   IV.   Proposed Intervenors are intervening to pursue appellate relief and pursue vital interests. .................................................................26

CONCLUSION .............................................................................................27

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*,
278 F.R.D. 664 (S.D. Fla. 2011)..................................................................24, 25

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022)..........................................................................................22

*Blackledge v. Allison*,
431 U.S. 63 (1977)............................................................................................21

*Bryan v. Wainwright*,
588 F.2d 1108 (5th Cir. 1979) ..........................................................................21

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
595 U.S. 267 (2022)..........................................................................................16

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) .............................................................21, 24, 25

*Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*,
918 F.3d 1161 (11th Cir. 2019) ........................................................................11

*Finn v. Cobb Cnty. Bd. of Elections & Registration*,
111 F.4th 1312 (11th Cir. 2024) ......................................................................19

*Georgia v. U.S. Army Corps of Eng'rs*,
302 F.3d 1242 (11th Cir. 2002) ........................................................................24

*Howard v. McLucas*,
782 F.2d 956 (11th Cir. 1986) ..........................................................................11

*League of Women Voters v. DHS*,
No. 25-cv-3501, 2026 WL 1784297 (D.D.C. June 22, 2026) .....................*passim*

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025)..............................5

*Loyd v. Alabama Dept. of Corrections*,
176 F.3d 1336 (11th Cir. 1999) ........................................................................27

*ManaSota-88, Inc. v. Tidwell*,
896 F.2d 1318 (11th Cir. 1990) ........................................................................24

*Marino v. Ortiz*,
484 U.S. 301 (1988)..........................................................................................19

*McDonald v. E. J. Lavino Co.*,
430 F.2d 1065 (5th Cir. 1971) ....................................................................*passim*

*Nat. Res. Def. Council v. Serv.*,
No. 16-cv-585, 2016 WL 5415127 (M.D. Fla. Sept. 28, 2016) ........................27

## Cases—continued

*Piambino v. Bailey*,
  757 F.2d 1112 (11th Cir. 1985) ................................................................27

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*,
  861 F.3d 1278 (11th Cir. 2017) ..........................................................11, 20

*Schneckloth v. Bustamonte*,
  412 U.S. 218 (1973)................................................................................21

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ........................................................2, 11, 14

*Stone v. First Union Corp.*,
  371 F.3d 1305 (11th Cir. 2004) ..........................................................18, 22

*Talentscale, Inc. v. Aery Aviation, LLC*,
  802 F. Supp. 3d 1370 (N.D. Fla. 2025) ..................................................20

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
  874 F.3d 692 (11th Cir. 2017) ............................................................21, 22

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972)............................................................................21, 22

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977)........................................................................3, 12, 25

*United States v. U.S. Steel Corp.*,
  548 F.2d 1232 (5th Cir. 1977) ................................................................13

*Worlds v. Dep't of Health & Rehab. Servs.*,
  929 F.2d 591 (11th Cir. 1991) ................................................................18

## Rules & Regulations

Fed. R. App. Proc. 4(1)(a)(B) ....................................................................12

Fed. R. Civ. P. 24(a)..................................................................................18

Department of Homeland Security Notice of a Modified System of
  Records, 90 Fed. Reg. 48,948 (Oct. 31, 2025) ......................................1

Social Security Administration Notice of a Modified System of
  Records, 90 Fed. Reg. 50,879 (Nov. 12, 2025) ....................................1

## Other Authorities

Charles Alan Wright & Arthur R. Miller, 7C Fed. Prac. & Proc. Civ. (3d ed.)......26

iii

**INTRODUCTION**

This Emergency Motion to Intervene (the "Motion") arises in the unusual context of "two conflicting orders" from separate federal district courts. ECF 45 at 8. Proposed Intervenors are among the beneficiaries of one of those orders. Now, just a day after the Court entered its order calling into question Proposed Intervenors' rights, they are timely seeking to intervene to protect the judgment they obtained and vindicate their members' inalienable liberties, which are suddenly in jeopardy.

On the one hand, after many months of litigation in *League of Women Voters v. DHS*, --- F. Supp. 3d ----, No. 25-cv-3501, 2026 WL 1784297 (D.D.C. June 22, 2026) ("*LWV*"), the District Court for the District of Columbia entered an order on June 22 setting aside and vacating two System of Records Notices, Department of Homeland Security Notice of a Modified System of Records, 90 Fed. Reg. 48,948 (Oct. 31, 2025) and Social Security Administration Notice of a Modified System of Records, 90 Fed. Reg. 50,879 (Nov. 12, 2025), as well as vacating and setting aside all modifications to the Systematic Verification for Alien Entitlements ("SAVE") system described in 90 Fed. Reg. 48,948, *see* 2026 WL 1784297, at *35. The set-aside and vacated modifications include SAVE users' ability to search in bulk, search via Social Security Number ("SSN"), and to query the Social Security Administration's citizenship database. *Id.* at *7-8. Absent such a decision, according to the *LWV* court, the plaintiffs' members were suffering injuries to their right to

privacy, reputational injuries, see *id.* at *11, and injuries to their right to vote, *id.* at *15, and the LWV plaintiffs were also incurring procedural injuries to their rights under the Privacy Act and Administrative Procedure Act, *id.* at *18.

On the other hand, after the parties entered a settlement agreement and the Court dismissed this action without prejudice, on July 7 this Court entered a post-dismissal order enforcing the parties' settlement agreement and "reinstating . . . access to the bulk-upload and SSN-search features in the SAVE system" for Florida, Indiana, Iowa, and Ohio. *See* ECF 45 at 9. In the Court's words, there are now "two contradictory orders—one from this Court requiring [the Government] to include certain features in the SAVE system," and one from the District Court for the District of Columbia "prohibiting [the Government] from doing so. One of the orders has to give." *Id.* at 7.

Whatever this Court's view on which court's order should win out, the interests of justice are unquestionably best-suited by all affected parties being able to participate in subsequent proceedings. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977) (finding that "two important purposes of Rule 24" are "to foster economy of judicial administration and to protect non-parties from having their interests adversely affected by litigation conducted without their participation"). Indeed, the Supreme Court has made clear that post-judgment intervention is proper so long as the intervenor "acted promptly after the entry of

2

final judgment," *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977), and the Eleventh Circuit has repeatedly permitted post-judgment intervention, *see, e.g., McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1971) (holding motion to intervene was timely where it was filed "one day after" order affecting intervenor's rights); *see also infra __*. That is because "it has been the traditional attitude of the federal courts to allow intervention 'where no one would be hurt and greater justice would be attained.'" *Id.*

Proposed Intervenors, two of the national organization plaintiffs from *LWV*, have far exceeded the necessary showing. They did not delay—seeking to intervene just a day after the Court's order requiring reinstatement of the SAVE system's functionality that was set aside and vacated as a result of Proposed Intervenors' successful litigation in *LWV*. Nor will intervention prejudice any existing party, because all that Proposed Intervenors seek is to participate in this case as it proceeds, including in any appeal of the Court's July 7 enforcement order. And Proposed Intervenors have a strong interest in preserving the judgment they obtained and vindicating their members' fundamental rights. Thus, under binding precedent interpreting Federal Rule of Civil Procedure 24, this motion is timely and Proposed Intervenors are both entitled to intervene as of right and satisfy the requirements for permissive intervention.

3

**BACKGROUND**

Plaintiffs the State of Florida and Florida Department of State filed this case against DHS and the DHS Secretary on October 16, 2024, arguing that Defendants were failing to respond to inquiries regarding voter verification in a timely manner, and that they should be required to respond using "any and all reasonably available information in Defendants' custody." *See* ECF 1 ¶¶ 46, 52, 61. SSA is not a defendant in this case and never has been. Although the initial Complaint made references to SAVE, none of the requests for relief mentioned SAVE or SSA data, let alone contemplated specific modifications to the SAVE system to incorporate SSA data. *See id.* at pp. 15-16 (prayer for relief). Defendants never answered or moved to dismiss the complaint, filing unopposed or consent extensions to respond on December 9, 2024, ECF 8, February 5, 2025, ECF 15, May 15, 2025, ECF 19, July 15, 2025, ECF 23, and September 11, 2025, ECF 25.

In May 2025, DHS and SSA began publicly modifying the SAVE system. The agencies entered into an "agreement to overhaul the SAVE system," purporting to authorize SSA to share its records with DHS for use in the SAVE system for the first time since the system was launched in 1986, and to enable bulk searches of SAVE using Social Security numbers (SSNs). *LWV*, 2026 WL 1784297, at *6. DHS launched an expanded version of SAVE that same month. *Id.*

4

In September 2025, a group of plaintiffs including Proposed Intervenors filed their initial complaint challenging the modifications to SAVE as unlawful.[1] *Id.* at *6; *see also* Complaint, *LWV*, No. 25-cv-3501, ECF 1 (D.D.C. Sep. 30, 2025), https://perma.cc/S7DB-MHBJ (challenging modifications to SAVE as substantively and procedurally unlawful under the Administrative Procedure Act, Privacy Act, Social Security Act, and U.S. Constitution, and as *ultra vires*). After the *LWV* plaintiffs sought preliminary relief, the court issued an opinion on November 17, 2025, stating it was "troubled by the recent changes to SAVE" and that it "doubt[ed] the lawfulness of the Government's actions," but declined to issue preliminary relief because in the court's view Proposed Intervenors had "not demonstrated irreparable injury" on the record before it. *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). The court later granted the State of Texas's motion to intervene as a defendant in the case under Federal Rule of Civil Procedure 24(a), based on its interest in using the modified

---

[1] The plaintiffs in *LWV* filed an amended and supplemental complaint on January 21, 2026. *LWV*, 25-cv-3501, ECF 61 (Jan. 21, 2026), https://perma.cc/L5NR-6YK6. The amended and supplemental complaint asserted similar claims against modifying SAVE, but omitted some claims about broader DHS data sharing practices not relevant to this case, and involved a slightly different group of plaintiffs. *See id.* The amended complaint added the League of Women Voters of Texas as an additional plaintiff that was not a party to the suit as originally filed; it also omitted class action claims and class representatives that had previously been party to the suit as originally filed. *See id.* The Proposed Intervenors are a subset of the plaintiffs in both the original and amended complaint.

"SAVE system for citizenship verification." Order, *LWV*, ECF 86, at 1 (Apr. 6, 2026). The state Plaintiffs in this case never moved to intervene in *LWV*.

On November 28, 2025, Plaintiffs in this case filed an amended complaint adding Iowa, Indiana, and Ohio as Plaintiffs, ECF 29, and, later the same day, a motion to dismiss based on a settlement agreement between the parties. ECF 30. Despite being on notice that DHS's SAVE changes were being challenged as unlawful, and, indeed, that another federal district court judge had already signaled they were likely unlawful, the parties entered into a settlement agreement in this case purporting to bind DHS to operate the modified SAVE system. *See* ECF 30-1, ¶ 10 (describing modified SAVE capabilities).[2]

On December 1, 2025, this Court entered a two-page order granting Plaintiffs' unopposed motion to dismiss, dismissing the case with prejudice, and retaining "jurisdiction over this case for a period of twenty years from the date of [this] order for the purpose of enforcement of the parties' settlement agreement," which the Court "approved" and "incorporated by reference" in its order. ECF 31. Prior to entry of this order, there was no adversarial litigation in this Court; DHS did not produce any administrative record; and the parties did not engage in any dispositive motion briefing addressing the lawfulness of the modified SAVE system. Nor did the

---

[2] The proposed settlement agreement was the first time that the bulk upload function and Social Security Number integration were specifically placed at issue in this case.

Court's December 1, 2025 order on its face resolve that unbriefed and unpresented legal issue. *See* ECF 31. Notably, the settlement agreement states, "Nothing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, *or with any federal statute* in effect at the time of such performance." ECF 30-1, ¶ 17 (emphasis added).

Neither Plaintiffs nor Defendants alerted this court to the pending litigation in *LWV*, or to the *LWV* court's November 17 decision calling into question the modifications to SAVE, prior to this Court's December 1, 2025 order dismissing the case and approving the settlement agreement. As the Court recently observed, "it is unfortunate that the parties to this case did not bring [*LWV*] to this Court's attention before it approved the settlement agreement." ECF 45 at 7, n.6.

Just as the parties in this case did not alert the Court to the *LWV* case before submitting the settlement for approval, the parties also did not alert the *LWV* court or the plaintiffs there (including the Proposed Intervenors) about the proposed settlement agreement until *after* the settlement was adopted. Indeed, when the Government belatedly notified the *LWV* court of the already-entered settlement agreement (along with various other developments), the Government suggested that the *LWV* parties could "address the significance (*if any*) of these developments *in future filings*." *See LWV*, ECF 59 (Dec. 5, 2025) (emphasis added).

7

On June 22, 2026, after DHS and SSA produced voluminous administrative records and the parties engaged in extensive dispositive motion briefing, the court in *LWV* granted summary judgment to Proposed Intervenors on their statutory and APA claims, finding that "there can be no question that the modified SAVE system violates" the Social Security Act, *LWV*, 2026 WL 1784297, at *20, that DHS and SSA "clearly violated the Privacy Act's non-disclosure bar by disclosing SSA records to DHS and SAVE users (including states) without the consent of the Plaintiffs' members," *id.* at *26, that their belated publication of applicable System of Record Notices and preordained response to public comments violated the APA's procedural requirements, *see id.* at *28, and that the changes to the SAVE system were arbitrary and capricious, *see id.* at *28-29. On all those bases, the *LWV* court vacated the changes to the SAVE system. *See id.* at *35. The court further denied the federal defendants' and Texas's motions to dismiss. *See id.*

On June 30, 2026, Plaintiffs filed an emergency motion to enforce the settlement agreement before this Court, asking it to order DHS (but not SSA, which is not a party to this case) to restore the modified SAVE system despite the June 22 order in *LWV*. ECF 32. The Court ordered an expedited two-day briefing schedule, requiring Defendants to respond to the motion by July 2. ECF 33. On July 1, Proposed Intervenors moved for leave to file an amicus brief, which noted among other things that the express terms of the settlement agreement did not obligate the

8

Government to undertake actions that violate federal law and argued that Defendants' compliance with *LWV* would therefore not breach the agreement. ECF 37-1 at 8-11. The Court granted Proposed Intervenor's motion and accepted the amicus brief. ECF 39. Defendants opposed Plaintiffs' motion to enforce, disagreeing with the correctness of *LWV* but agreeing with Proposed Intervenors that compliance with that decision would not breach the settlement agreement. ECF 42 at 6-8.[3]

On July 7, 2026, the Court granted Plaintiffs' motion to enforce. ECF 45. The Court found that Defendants violated the settlement agreement by "disabl[ing] the bulk-upload and SSN-search features that the agreement expressly required the SAVE system to have." *Id.* at 5. The Court rejected Proposed Intervenors' and Defendants' arguments, stating that it "implicitly found that the modifications [to SAVE] were not inconsistent with federal law when it approved the settlement agreement." *Id.* at 6. The Court also stated that its decision "makes explicit what was implicit in the approval of the settlement agreement—the modifications to the SAVE system . . . do not violate the Social Security Act or the Privacy Act." *Id.* at 6 n.5; *see also id.* at 7-8. The Court acknowledged that its decision "puts Defendants in a bind because they are subject to two contradictory orders—one from this Court requiring them to include certain features in the SAVE system and one from [the

---

[3] On July 8, the District Court for the District of Columbia denied the federal defendants' motion to stay the *LWV* order vacating and setting aside the modified SAVE system. *See LWV*, ECF 123.

U.S. District Court for the District of Columbia] prohibiting them from doing so." *Id.* at 7. The Court also recognized that "[o]ne of the orders has to give" but noted that it "is not persuaded . . . that its order is the one that should give." *Id.*

Notably, the Court acknowledged "some merit" to Proposed Intervenors' argument that the Court simply cannot "grant Plaintiffs the relief they are seeking in their motion because the agency whose cooperation is necessary for the SSN feature—the Social Security Administration—"is not a party to this case but is a party to Judge Sooknanan's case." *Id.* at 9. Yet instead of resolving that dispositive legal question, this Court deemed it sufficient to "order Defendants to comply with their obligations under the settlement agreement and leave it to them to figure out how best to fulfill those obligations." *Id.*

On July 7, the same day the Court entered its Order, counsel for Proposed Intervenors contacted counsel for Defendants and asked "what actions Defendants intend to take regarding this [Court's] order, and on what timeline?" *See* Exhibit 2. Counsel for Defendants stated only that "[w]e are reviewing the order, as explained in the filing we just made in *League of Women Voters*. Happy to discuss further at the appropriate time." *Id.* In a subsequent email on July 8, counsel for Defendants further advised that they "don't have any updates that [they] can share at this time. . . . [T]his is a very complicated situation that we are sorting through as quickly as possible given the various constraints." *Id.*

10

Regarding this Motion, Defendants take "no position at this time" but reserves the right to file a further response, if necessary, and Plaintiffs oppose the Motion.

## ARGUMENT

The Court should grant the Motion. Proposed Intervenors have acted expeditiously once the need for intervention became apparent, and they satisfy the factors for both intervention as of right and permissive intervention.

## I.    The Motion is timely.

"Whether leave to intervene is sought under section (a) or section (b) of Rule 24, the application must be timely." *Stallworth*, 558 F.2d at 263. The Eleventh Circuit (and the predecessor Fifth Circuit) has repeatedly held that post-judgment intervention is appropriate in cases such as this. *See Lavino Co.*, 430 F.2d at 1074; *see also Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171-73 (11th Cir. 2019) (granting leave to intervene after judgment); *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278 (11th Cir. 2017) (granting leave to intervene filed "thirty-three years" after entry of injunction was not untimely where reason for intervention "arose only two weeks before [party] sought to intervene"); *Howard v. McLucas*, 782 F.2d 956, 960 (11th Cir. 1986) (granting post-judgment leave to intervene to challenge consent decree). Proposed Intervenors' Motion is plainly timely.

11

In the context of motions for "post-judgment intervention for the purpose of appeal"—like this Motion—the Supreme Court has put a fine point on the governing standard, holding that the "critical inquiry in every such case is whether in view of all the circumstances the intervenor *acted promptly after the entry of* final judgment" or an appealable order. *McDonald*, 432 U.S. at 395-96 (emphasis added). Such a motion to intervene is timely when it is filed "within the time period in which the [aggrieved party] could have taken an appeal." *Id.* at 396.

The Proposed Intervenors' Motion easily passes this test. The Court only entered its enforcement order yesterday, meaning Proposed Intervenors acted promptly by any standard and are seeking to intervene long before the time period for taking an appeal will elapse. *See* Fed. R. App. Proc. 4(1)(a)(B) (providing for 60 days to file a notice of appeal if a party is an agency of the United States). Nor will intervention harm any party, because what the Proposed Intervenors seek is the ability to participate in (or, if necessary, initiate) an appeal and, in the process, vindicate their many undisputed interests in their members' privacy, *LWV*, 2026 WL 1784297, at * 11, reputations, *id.* at *12, and voting rights, *id.* at *15, as well as their procedural rights, *id.* at *19. The Court need look no further than those facts to conclude that the Motion is timely. *See Lavino*, 430 F.2d at 1074 (reversing denial of motion to intervene filed one day after judgment and before enforcement of order to be appealed, because "no one will be harmed in any way if the intervention is

12

allowed" and "denial of the motion to intervene will harm [the intervenor] by frustrating its efforts to satisfy its subrogation interest").

Further, to the extent the Court conducts any further inquiry, the Proposed Intervenors also readily satisfy the factors courts in this Circuit look to in considering the timeliness of motions to intervene. Timeliness "is not a word of exactitu[d]e or of precisely measurable dimensions." *Lavino*, 430 F.2d at 1074. Nor is timeliness "limited to chronological considerations"; instead it "is to be determined from all the circumstances." *Id.* (quoting *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977)). Thus, Rule 24's timeliness requirement is *not* "a tool of retribution which can be used to punish a would-be intervenor for allowing time to pass before moving to intervene." *Lavino*, 430 F.2d at 1074. Rather, "since 'the privilege of intervention stems from a desire to protect the rights of unrepresented third parties, it becomes apparent that the timely application requirement under Rule 24 was" "designed to insure that the original parties should not be prejudiced by the intervener's failure to apply sooner.'" *Id.* (citation omitted). In assessing all of the circumstances, courts consider: (1) the "length of time during which the would-be intervenor actually know or reasonably should have known of his interest in the case before he petitioned for leave to intervene," (2) the "extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should

13

have known of his interest in the case," (3) the "extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied," and (4) the "existence of unusual circumstances militating either for or against a determination that the application is timely." *Stallworth*, 558 F.2d at 264-66.

The Motion comports with each factor. First, Proposed Intervenors could not have been reasonably expected to be "on notice" of the need to intervene prior to—at the earliest—the States' motion to enforce in this case, and there was no clear conflict between the *LWV* order and the settlement in this case until this Court issued its ruling on that motion. To start, the Complaint in this case did not put Proposed Intervenors on notice of their intent to seek access to modified SAVE. The Complaint was filed *before* the Government modified SAVE. *Compare* ECF 1 (filed on Oct. 16, 2024) *and LWV*, 2026 WL 1784297, at *6 (stating SAVE was modified on May 22, 2025). And the Complaint's prayer for relief did not even mention SAVE, let alone contemplate specific modifications to the SAVE system. *See* ECF 1 at pp. 15-16 (prayer for relief). Further, SSA—whose data and DHS's access to it are at the center of the *LWV* litigation—is *not even a party to this case.*

Nor could Proposed Intervenors have reasonably intervened to contest the settlement agreement. When Plaintiffs filed their First Amended Complaint on November 28, 2025 (a court holiday), they simultaneously filed a motion to dismiss and fully executed settlement agreement. *See* ECF Nos. 29, 30, 30-1. The next

14

business day, December 1, 2025, the Court granted the motion to dismiss and "approved" and "incorporated by reference" the settlement agreement in its dismissal order. ECF 31. The Government did not notify the *LWV* parties and court about the settlement agreement in this case until December 5, 2025—after the settlement was executed and incorporated by this Court. *LWV*, ECF 59 (Dec. 5, 2025). And even then the Government's position was that the *LWV* parties could "address the significance (*if any*) of these developments *in future filings*." *Id.* (emphasis added).

Moreover, for the reasons laid out in Proposed Intervenors' amicus brief, it was not clear that the settlement agreement in this case had *any* effect on the *LWV* case, given that *LWV* (and the underlying changes to the SAVE system) predated the settlement agreement, the Government asserted that the settlement could not bind them to unlawful action, the parties here had never briefed (and this Court had never opined on) any of the legal issues raised in the *LWV* case, and SSA was not a party to this matter. *See* ECF 37-2 at 8-14.[4] Proposed Intervenors' interest in this case thus did not fully mature until June 30, when Plaintiffs filed their emergency motion to enforce.

---

[4] Proposed intervenors acknowledge that this Court has now made it clear that it believes the settlement agreement can and does bind DHS to take steps contradicting the *LWV* order. ECF 45.

Second, there is no prejudice to the parties in this case from "the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene." Proposed Intervenors have moved with haste to protect their interests in this Court. Once Proposed Intervenors became aware of the Plaintiffs' June 30th motion to enforce, Proposed Intervenors moved promptly to file an amicus brief explaining their position to the parties and this Court prior to the deadline imposed by this Court for Defendants' to respond to Plaintiffs' motion. *See* ECF 37. Indeed, no party opposed Proposed Intervenors' participation as amici. *See id.* And when this Court issued its ruling enforcing the settlement agreement and thereby clarifying its view on the impact the settlement has on Proposed Intervenors' interests, Proposed Intervenors filed this motion to intervene the very next day. *See*, *e.g.*, *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 280 (2022) ("The attorney general's need to [intervene] did not arise until the secretary ceased defending the state law, and the timeliness of his motion should be assessed in relation to that point in time."); *Lavino*, 430 F.2d at 1074. Moreover, intervention will not delay the further resolution of this case—whether on appeal or through various enforcement motions. All Proposed Intervenors seek is to participate in litigating this matter going forward and in the normal course.

16

Third, the prejudice to Proposed Intervenors should this Court deny intervention is severe. Proposed Intervenors brought a case in an appropriate forum, vigorously litigated it through the production of a robust administrative record and cross-dispositive motions, and secured a favorable decision recognizing the Proposed Intervenors' substantial interests in remedying injuries to their privacy interests, reputational interests, voting rights, and procedural rights. *See LVW*, 2026 WL 1784297, at *11-19. Proposed Intervenors are national organizations and, as the *LWV* court noted, "[m]embers of local and state Leagues of Women Voters are also members of the League of Women Voters." *Id.* at *11, n.4. And now that this Court has ruled on the impact of the *LVW* ruling and its interpretation of the settlement agreement, Proposed Intervenors are at risk of being unable to enforce the judgment they have legitimately secured—or having it collaterally undercut—without participation via intervention in this Court.

And fourth, the unusual circumstances here militate for determining the Motion is timely. While it may be "unusual" for a "motion to intervene [to] c[o]me after final judgment," *Lavino Co.*, 430 F.2d at 1074, this Court has observed that the posture of this case is itself unusual, with "two conflicting orders" at issue here, ECF 45 at 8. Proposed Intervenors acted as soon as it became clear that was the case.

17

## II.    LVW and EPIC are entitled to intervene as of right.

In the Eleventh Circuit, a party seeking intervention of right under Fed. R. Civ. P. 24(a) must "demonstrate that: '(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.'" *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004) (quoting *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 593 (11th Cir. 1991)). In addition to being timely, as discussed above, Proposed Intervenors satisfy each of these remaining elements.

### A. LVW and EPIC have an interest in the Court's enforcement order.

There can be no question that Proposed Intervenors have an interest in the Court's enforcement order. Indeed, the Court has already implicitly recognized as much by granting Proposed Intervenors leave to file an amicus. *See* ECF 39.

In this Court's own view, Defendants are "in a bind because they are subject to two contradictory orders—one from this Court requiring them to include certain features in the SAVE system and one from [the U.S. District Court for the District of Columbia] prohibiting them from doing so." ECF 45 at 7. In *LVW*, the court granted summary judgment in favor of Proposed Intervenors, finding that the modifications to SAVE violated the Social Security Act, Privacy Act, and

18

Administrative Procedure Act, and in doing so had inflicted privacy or reputational injuries, voter injuries, and procedural injuries upon Proposed Intervenors. *LWV*, 2026 WL 1784297, at *2, 11, 20-30. To remedy the harms from this unlawful conduct, the court vacated the challenged changes to the SAVE system. *See id.* at *35 (setting aside and vacating applicable System of Record Notices). Compliance with this Court's "contradictory order[]" would reimpose these harms on Proposed Intervenors. This is exactly the type of interest that warrants intervention.

Nor will further participation as amicus fully protect Proposed Intervenors' rights. To start, Proposed Intervenors seek to appeal this Court's order granting Plaintiffs' emergency motion to enforce, and it is unclear whether the Government intends to appeal the Court's order enforcing the settlement agreement, as counsel for the Government demurred when asked "what actions Defendants intend to take regarding this [Court's] order, and on what timeline." *See* Exhibit 2. Moreover, as both the Eleventh Circuit and Supreme Court have observed, "when a nonparty has an interest that is affected by a district court judgment, the 'better practice' is for such a nonparty to seek intervention for purposes of appeal." *Finn v. Cobb Cnty. Bd. of Elections & Registration*, 111 F.4th 1312, 1319 (11th Cir. 2024) (quoting *Marino v. Ortiz*, 484 U.S. 301, 304 (1988)). Proposed Intervenors previously sought to participate only as amicus to shed light on the interpretation of the language in the parties's settlement agreement providing that "[n]othing contained in this Settlement

19

Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with" any law, ECF 30-1, ¶ 17, and because of the Court's expedited schedule regarding the motion to enforce the settlement agreement. Now that Proposed Intervenors are on notice about the Court's interpretation of that language and how it impacts their rights, they are pursuing that "better practice."

### B. Defendants' compliance with the Court's enforcement order will impair LVW's and EPIC's interests.

To meet the third prong of intervention, a party must be "practically disadvantaged by [its] exclusion from the proceedings." *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1295 (11th Cir. 2017). That standard is easily met here. The Court's enforcement order directs Defendants to "reinstate[] Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system," ECF 45 at 9, which is at odds with the relief Proposed Intervenors won in *LWV*. As discussed above, if this order stands and Defendants comply with it, Proposed Intervenors will suffer privacy and reputational injuries, voter injuries, and procedural injuries. *See LWV*, 2026 WL 1784297, at *11-19. Proposed Intervenors are national organizations with members across the country including in Plaintiff states. Moreover, Proposed Intervenors unquestionably have an interest in protecting the judgment they secured in *LWV*. *See Talentscale, Inc. v. Aery Aviation, LLC*, 802 F. Supp. 3d 1370, 1375 (N.D. Fla. 2025) (party "has a strong interest in enforcing

20

its judgments"); *accord Bryan v. Wainwright*, 588 F.2d 1108, 1111 (5th Cir. 1979) (recognizing "strong interest in preserving the finality of judgments" (citing *Blackledge v. Allison*, 431 U.S. 63 (1977) (Powell, J., concurring) & *Schneckloth v. Bustamonte*, 412 U.S. 218, 256-266 (1973) (Powell, J., concurring)).

### C. LVW's and EPIC's interests are not adequately represented by the existing parties.

"The Supreme Court has held that the inadequate representation requirement is satisfied if the [proposed intervenor] shows that representation of his interest 'may be' inadequate and that 'the burden of making that showing should be treated as minimal.'" *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989) (citing *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972)) (citation modified).

There is no question that Proposed Intervenors' interests are not adequately represented by either party here, where Proposed Intervenors sued one of the same Defendants to obtain the conflicting order in *LWV*, and the relief Plaintiffs here seek is at odds with the relief sought in *LWV*. Moreover, the parties here entered into a settlement agreement seeking to cement for twenty years some of the very changes that Proposed Intervenors successfully challenged in *LWV*.

There is a "weak" presumption of adequate representation where intervenors and the existing party pursue "the same general objective." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017). This presumption

21

"merely imposes upon the proposed intervenors the burden of coming forward with some evidence to the contrary." *Id.*; *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) ("Where 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation."). If the presumption is overcome, adequate representation exists "(1) if no collusion is shown between the representative and an opposing party, (2) if the representative does not have or represent an interest adverse to the proposed intervener, and (3) if the representative does not fail in fulfillment of his duty." *Stone*, 371 F.3d at 1311. "Interveners need only show that the current [party's] representation 'may be inadequate,' however, and the burden for making such a showing is 'minimal.'" *Id.*; *see also Trbovich*, 404 U.S. at 538 n.10 (similar).

That presumption, if it even applies, is easily overcome. Here, Proposed Intervenors' position overlapped in part with that of the Defendants in opposing Plaintiffs' motion to enforce the settlement agreement. Both agreed that the terms of the settlement agreement did not conflict with the U.S. District Court for the District of Columbia's order in *LWV* because the agreement did not "require DHS to take actions 'inconsistent with . . . any federal statute.'" ECF 37-1 at 9 (quoting ECF 30-1, ¶ 17; *see also* ECF 42 at 6-7. Their positions sharply diverged, however, when it came to the correctness of the decision in *LWV* and the lawfulness of modified

22

SAVE. *See* ECF 42 at 7, n.1 ("The amicus brief errs, however, in contending that 'the particular steps that DHS and SSA took to overhaul SAVE violated a number of federal statutes.'" (quoting ECF 37-1 at 10)). Indeed, in responding to the motion to enforce, Defendants emphatically demonstrated its disagreement with Proposed Intervenors' "contentions regarding the procedural obligations of the Privacy Act and Administrative Procedure Act" and how those statutes affect the Government's ability to enforce the settlement agreement. *Id.* at 9-10 (capitalization modified).

And now that this Court has "explict[ly]" found that "the modifications to the SAVE system . . . do not violate the Social Security Act or the Privacy Act," ECF 45 at 6 n.5, there can be no doubt that the Defendants—who agree with the Court's assessment, and are zealously seeking to appeal and stay the LWV order—will not adequately represent Proposed Intervenors' interests as this litigation proceeds. Indeed, as of the date of this filing, counsel for Defendants could not state how they intended to respond to the Court's enforcement order and the *LWV*'s court's order vacating the SAVE system. *See* Exhibit 2.

## III.    LWV and EPIC are entitled to permissive intervention.

Even if this Court does not find that Proposed Intervenors may intervene by right, Proposed Intervenors are certainly eligible to intervene by permission. "A party seeking to intervene under Rule 24(b)(2) must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question

23

of law or fact in common." *Chiles*, 865 F.2d at 1213. "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990). Courts consider whether the intervenor "will add materially to the instant litigation." *Am. Fed'n of State, Cnty. & Mun. Emps. (AFSCME) Council 79 v. Scott*, 278 F.R.D. 664, 671 (S.D. Fla. 2011).

A court looks to similar factors as intervention by right when considering the timeliness of a permissive motion to intervene. *See Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002). As discussed above, Proposed Intervenors' motion is timely under either standard for intervention. *See supra* § I.

Having demonstrated that the Motion is timely, it is also easily established that Proposed Intervenors share a question of law in common with this case. At issue in both cases is the lawfulness of DHS's modified SAVE, the correct interpretation of 8 U.S.C. § 1373, and whether modified SAVE violates the Social Security Act or the Privacy Act, *see* ECF 45 at 6 (noting that modified SAVE's bulk-upload and SSN-search features, are "expressly required" by the settlement agreement in this case). Indeed, it is the very overlap of these common questions that have caused the "contradictory orders" at issue in this case and *LWV*. *Id*. at 7. If that was unclear before now, it is clear as of this Court's order enforcing the settlement agreement, which "mad[e] explicit what was implicit in the approval of the settlement

24

agreement—the modifications to the SAVE system, including the bulk-upload and SSN-search features, do not violate the Social Security Act or the Privacy Act." ECF 45 at 6 n.5.

Proposed Intervenors will not unduly delay or prejudice the adjudication of the rights of the original parties. To the contrary, the participation of Proposed Intervenors will help clarify the rights and obligations of the parties and allow the important question raised by the "two conflicting orders" at issue here, ECF 45 at 8, to be resolved more expeditiously. *See McDonald*, 432 U.S. at 394 (holding that litigant cannot claim "unfair[ ] prejudice[ ]" when one person takes over an appeal from another).

Proposed Intervenors also "add materially to the instant litigation," *AFSCME Council 79*, 278 F.R.D. at 671, because they are the prevailing party in the *LWV* case, and their viewpoint differs from both Plaintiffs and Defendants here. Indeed, this Court has already recognized the value of Proposed Intervenors' participation, finding an argument in their amicus (not raised by Defendants') as "not without some merit." ECF 45 at 9. In light of these facts, it is easy to conclude that Proposed Intervenors do not have the sort of "duplicative nature of the claims and interests" that would "threaten[] to unduly delay the adjudication of the rights of the parties in the lawsuit and makes it unlikely that any new light will be shed on the issues to be adjudicated." *Chiles*, 865 F.2d at 1215.

25

Should this Court believe it is appropriate, it "may specify the conditions on which it will allow the applicant to become a party. In this way it can order the proceedings so as to minimize delay and prejudice to the existing parties." Charles Alan Wright & Arthur R. Miller, 7C Fed. Prac. & Proc. Civ. § 1913 (3d ed.). Here, Proposed Intervenors suggest that if the Court finds it appropriate, this Court could set the condition that Proposed Intervenors be permitted to intervene for the limited purpose of participation in any further enforcement proceedings, including staying or appealing this Court's order on the motion to enforce.

## IV.    Proposed Intervenors are intervening to pursue appellate relief and pursue vital interests.

Proposed Intervenors seek leave to intervene for purposes of participation in any further enforcement proceedings in this Court and for the purpose of pursuing appellate relief in the Eleventh Circuit. As previewed in their amicus brief and above, Proposed Intervenors' position is that: (1) the plain terms of the settlement agreement do not require Defendants to restore the overhauled SAVE system functions if those features are unlawful (as they were found to be in the *LWV* decision); (2) Defendants' compliance with the enforcement order would be unlawful under the Social Security Act, Privacy Act, and the APA (as found in *LWV*, the only decision to rule on this issue after consideration of the complete administrative record and briefing on the merits by adverse parties); and (3) such compliance would inflict harm on Proposed Intervenors. *See also LWV*, ECF 123

26

(denying Government motion for stay pending appeal after considering effect of this Court's enforcement order).

The Court has already rejected Proposed Intervenors' claims, explaining that it "implicitly found that the [SAVE] modifications were not inconsistent with federal law when it approved the settlement agreement" and "mak[ing] explicit" its rejection of the conclusions in Judge Sooknanan's 75-page order in *LWV*. ECF 45 at 6-8. Accordingly, pursuant to Rule 24(c), Proposed Intervenors seek leave to intervene to defend their interests in the Eleventh Circuit by filing a notice of appeal. *See* Exhibit 1.[5]

## CONCLUSION

In conclusion, Proposed Intervenors respectfully request that this Court grant the Emergency Motion to Intervene.

---

[5] Proposed Intervenors do not understand Rule 24(c) to require an answer or motion to dismiss in these circumstances, especially where the underlying case has been dismissed and Proposed Intervenors seek leave to intervene for purposes of appealing the Court's enforcement order. *See Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985) (rejecting "excessively technical" understanding of Rule 24(c) requirements where "[e]veryone knew the nature of [intervenor's] substantive claims for relief"); *see also Loyd v. Alabama Dept. of Corrections*, 176 F.3d 1336, 1341 (11th Cir. 1999) (similar); *Nat. Res. Def. Council v. Serv.*, No. 16-cv-585, 2016 WL 5415127, at *5 (M.D. Fla. Sept. 28, 2016) (purpose of Rule 24(c) is "to put the other parties 'on notice of the position, claim, and relief sought by the intervenor" and "court has granted a motion to intervene when the motion, which is not accompanied by a pleading, clearly states an intervenor's position"). In this case, "the motion to intervene . . . clearly spell[s] out [Proposed Intervenors'] position" and "[a]ny additional 'pleading'" would be "surplusage." *Piambino*, 757 F.2d at 1121.

27

Dated: July 8, 2026                         Respectfully submitted,


*/s/ Lauren C. Bingham*
Lauren C. Bingham                           Aman T. George*
Fla. Bar No. 105745                         D.C. Bar No. 1028445
LBingham@citizensforethics.org              ageorge@democracyforward.org
CITIZENS FOR RESPONSIBILITY                 DEMOCRACY FORWARD FOUNDATION
AND ETHICS IN WASHINGTON                    P.O. BOX 34553
P.O. Box 14596                              Washington, DC 20043
Washington, DC 20044                        (202) 448-9090
(202) 408-5565

                                            *admitted *pro hac vice*
Gerald E. Greenberg
Florida Bar No. 440094
ggreenberg@gsgpa.com
Daniel R. Walsh
Florida Bar No. 0124282
dwalsh@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
(305) 728-0950
E-service: efilings@gsgpa.com


*Counsel for Proposed Intervenors*

28