**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

STATE OF FLORIDA and the
FLORIDA DEPARTMENT OF STATE,

     *Plaintiffs,*

     v.                             Case No. 3:24-cv-509-TKW-HTC

THE DEPARTMENT OF
HOMELAND SECURITY; and
MARKWAYNE MULLIN, in his
Official Capacity as Secretary
of the United States
Department of Homeland Security,

     *Defendants.*

_____/

**PLAINTIFFS' OPPOSITION TO LEAGUE OF WOMEN VOTERS' AND
ELECTRONIC PRIVACY INFORMATION CENTER'S
EMERGENCY MOTION TO INTERVENE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... 3

INTRODUCTION .................................................................................................... 5

BACKGROUND ...................................................................................................... 7

    A.    Plaintiffs' lawsuit. ..................................................................................... 7

    B.    The parties execute a settlement agreement and the Court approves it. ...... 7

    C.    A district court issues an order vacating the modified SAVE system. ........... 8

    D.    Defendants disable functions of the SAVE system that are guaranteed by the settlement agreement. ....................................................................... 10

    E.    The Court grants Plaintiffs' emergency motion to enforce the settlement agreement. .............................................................................................. 10

    F.    LWV and EPIC move to intervene. .......................................................... 11

ARGUMENT ........................................................................................................ 11

    I.    LWV and EPIC's motion is untimely. ...................................................... 11

    II.    In the alternative, LWV and EPIC have not established standing to intervene. ................................................................................................ 16

CONCLUSION ..................................................................................................... 18

**TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Campbell v. Hall-Mark Elecs. Corp.,*
808 F.2d 775 (11th Cir. 1987) ................................................................................. 13

*Camreta v. Greene,*
563 U.S. 692 (2011) .................................................................................................. 14

*Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC,*
918 F.3d 1161 (11th Cir. 2019) ........................................................................ 11, 12

*Cox Cable Commc'ns, Inc. v. United States,*
992 F.2d 1178 (11th Cir. 1993) ............................................................................... 16

*Georgia v. U.S. Army Corps of Eng'rs,*
302 F.3d 1242 (11th Cir. 2002) ............................................................................... 11

*Howard v. McLucas,*
782 F.2d 956 (11th Cir. 1986) ................................................................................. 12

*League of Women Voters v. DHS,*
No. 26-5243, Doc. #2182390 (D.C. Cir. July 8, 2026) ............................................ 17

*League of Women Voters v. U.S. Dep't of Homeland Sec'y,*
No. 25-cv-3501 (D.D.C. April 2, 2026) .................................................................. 9, 12

*ManaSota-88, Inc. v. Tidwell,*
896 F.2d 1318 (11th Cir. 1990) ............................................................................... 15

*Martin v. Wilks,*
490 U.S. 755 (1989) .................................................................................................. 16

*McDonald v. E. J. Lavino Co.,*
430 F.2d 1065 (5th Cir. 1970) ................................................................................. 12

*Reeves v. Wilkes,*
754 F.2d 965 (11th Cir. 1985) ................................................................................. 15

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel,*
861 F.3d 1278 (11th Cir. 2017) ........................................................................ 11, 12

*United Airlines, Inc. v. McDonald,*
432 U.S. 385, 390 (1977) ......................................................................................... 12

*United States By Bell On Behalf of Marshall v. Allegheny-Ludlum Indus., Inc.,*
553 F.2d 451 (5th Cir. 1977) ................................................................................... 12

*United States v. Texas,*
No. 25-10898, --- F.4th ---, 2026 WL 1983151 (5th Cir. July 9, 2026) .................... 16

*Virginia House of Delegates v. Bethune-Hill,*
587 U.S. 658 (2019) .................................................................................................. 16

**Statutes**

8 U.S.C. § 1373 .......................................................................................................... 7

8 U.S.C. § 1644 .......................................................................................................... 7

Fla. Stat. § 98.075 ...................................................................................................... 7

Ind. Code § 3-7-38.2-7.3 ............................................................................................ 7

Ind. Code §§ 3-7-26.3-10 & 16 ................................................................................. 7

Iowa Code §§ 47.1, 47.7, 39A.7 ............................................................................... 7

Ohio Rev. Code § 3501.04 ........................................................................................ 7

**Regulations**

Notice of a Modified System of Records, 90 Fed. Reg. 48,948 ..................................... 8

Notice of a Modified System of Records, 90 Fed. Reg. 50,879 ..................................... 8

**Other Authorities**

18 J. Moore et al., Moore's Federal Practice § 134.02 (3d ed. 2011) ........................... 14

## INTRODUCTION

Late last year, the parties entered into a settlement agreement and Plaintiffs voluntarily dismissed the case. This Court approved and incorporated the settlement agreement into its dismissal order and retained jurisdiction to enforce it. Among other terms, the settlement agreement requires Defendants to ensure that the SAVE system has a bulk upload function and is searchable via Social Security Numbers and last-four-digits Social Security Numbers.

Four days later, LWV and EPIC (the Movants), who had been pressing their own later-filed lawsuit in the U.S. District Court for the District of Columbia regarding the lawfulness of modifications to SAVE—including those required by the settlement agreement here—were notified of the settlement agreement and of Defendants' binding obligations to maintain those features of SAVE. LWV and EPIC did not attempt to intervene in this case, even though it was plain to all that the relief they sought in D.C. would conflict with the settlement agreement here.

Seven months passed.

After Defendants breached the settlement agreement by disabling the bulk-upload and SSN-search features in SAVE that the agreement expressly required, Plaintiffs moved to enforce the settlement agreement. Still LWV and EPIC did not attempt to intervene.

Only after the Court granted Plaintiffs' motion to enforce the settlement agreement did LWV and EPIC move to intervene. That motion is untimely, and allowing their intervention now would unduly prejudice the parties. Movants propose

to intervene for the sake of appealing the Court's order enforcing the settlement agreement because the obligations it imposes on Defendants are unlawful. But the parties never had an opportunity to brief or address those arguments. Nor did the parties have an opportunity to develop a record. To allow Movants to inject those issues on appeal, for the first time, harms both parties. All the more so when Movants could and should have sought to raise those issues seven months ago and thereby given the parties a chance to fully address the issues. And denying intervention does not prejudice Movants because they continue to litigate the lawfulness of the modifications to SAVE in the D.C. Circuit. Defendants here, who opposed the motion to enforce the settlement agreement, can adequately represent Movants' interest in avoiding the settlement agreement's enforcement on appeal.

If, on the other hand, Defendants do not appeal, granting Movants leave to intervene for the purpose of appealing the enforcement order is improper because Movants have not independently established standing. Movants have no rights under the settlement agreement; the Court has already held that Defendants' obligations under the settlement agreement are lawful and thus cannot cause Movants any injury; Movants' alleged privacy, reputational, and procedural injuries are insufficiently concrete; and any concrete injuries would be traceable to and redressable by only the States, not Defendants.

The motion to intervene should be denied.

6

## BACKGROUND

### A.   Plaintiffs' lawsuit.

This case involves Plaintiffs' obligations to maintain accurate and current voter registration records to prevent voter fraud, including non-citizen voting. *See* § 98.075(1), Fla. Stat.; Ohio Rev. Code § 3501.04; Iowa Code §§ 47.1, 47.7, 39A.7; Ind. Code §§ 3-7-26.3-10 & 16; Ind. Code § 3-7-38.2-7.3. The federal government likewise has a duty to cooperate with States in ensuring that only citizens vote in their elections. *See* 8 U.S.C. § 1373(c); 8 U.S.C. § 1644.

Because the federal government had been refusing to comply with its obligation and had frustrated Plaintiffs' ability to maintain the integrity of their elections, Plaintiffs sued in November 2024. ECF 6. In the amended complaint, Plaintiffs sought an order holding unlawful Defendants' failure to provide Plaintiffs with the required response to their inquiries to verify or determine the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law; a declaration that Plaintiffs are entitled to the required response to their inquiries; and permanent injunctive relief, or the issuance of a writ of mandamus, ordering Defendants to adequately respond to the inquiries made by Plaintiffs. ECF 29, at 24.

### B.   The parties execute a settlement agreement and the Court approves it.

In November 2025, the parties executed a settlement agreement resolving all of Plaintiffs' claims. ECF 30-1. In exchange for Plaintiffs' release and dismissal of their claims with prejudice, Defendants agreed—among other things—to ensure that

7

the SAVE system had the capability to (1) "[i]ntegrat[e] with the Social Security Administration to allow searches with full [SSNs] to be used as a non-DHS enumerator"; (2) "[i]ntegrat[e] with the Social Security Administration to allow searches with last-four-digits SSNs to be used as a non-DHS enumerator"; and (3) "process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one." ECF 30-1, at 4–5.

Relying on Defendants' guarantees in the settlement agreement, Plaintiffs moved to dismiss with prejudice under Federal Rule of Civil Procedure 41(a)(2). The Court granted that motion. ECF 31. The Court retained jurisdiction over the case for the purpose of enforcing the settlement agreement. ECF 31, at 1–2.

From December 2025 to June 2026, Plaintiffs and Defendants performed their duties and obligations under the settlement agreement. As relevant here, Defendants ensured that the SAVE system had a bulk upload function and was searchable via Social Security Numbers and last-four-digits Social Security Numbers. *See* ECF 32-1, ¶ 5.

C.   **A district court issues an order vacating the modified SAVE system.**

In late 2025, DHS and the Social Security Administration published System of Records Notices (SORNs) for the modifications made to their systems that allowed for the changed functionality of the SAVE system. Notice of a Modified System of Records, 90 Fed. Reg. 48,948; Notice of a Modified System of Records, 90 Fed. Reg. 50,879.

A group of plaintiffs, including LWV and EPIC, challenged the modifications made to the SAVE system outlined in those SORNs in the U.S. District Court for the District of Columbia. The federal government defended the modifications to the SAVE program in its briefing, noting those changes were "as required by the judicially enforceable settlement agreement in Florida." *See* ECF 77-1 at 63, *League of Women Voters v. U.S. Dep't of Homeland Sec'y*, No. 25-cv-3501 (D.D.C. April 2, 2026). Given the prior-in-time binding order, DHS in that case argued that "principles of equity and comity also require the Court not to enter relief that would subject the United States to conflicting court orders." *Id.* at 62.

U.S. District Judge Sparkle L. Sooknanan ignored those concerns. On June 22, 2026, Judge Sooknanan granted plaintiffs' motion for summary judgment and held that the modified SAVE system violated the Social Security Act and the Privacy Act of 1974 and that its establishment was arbitrary and capricious under the Administrative Procedure Act. *League of Women Voters*, 2026 WL 1784297, at *20, *21, *28 (D.D.C. June 22, 2026). As a result, Judge Sooknanan issued an order "set[ting] asid[e] and vacat[ing]" "the SAVE 'modified system" and the related SORNs. *Id.* at *35.

The federal government appealed and moved to stay pending appeal, but Judge Sooknanan denied the motion to stay pending appeal. *League of Women Voters*, No. 25-cv-3501, ECF 123, 124 (D.D.C. July 8, 2026).

9

**D.   Defendants disable functions of the SAVE system that are guaranteed by the settlement agreement.**

Sometime around June 24, 2026, Defendants disabled the bulk upload function in SAVE.  ECF 32-1, ¶ 5.  Defendants also disabled the ability for States to search the database with Social Security Numbers or last-four-digit Social Security Numbers.  ECF 32-1, ¶ 5.

**E.   The Court grants Plaintiffs' emergency motion to enforce the settlement agreement.**

After Defendants took the position that Judge Sooknanan's order bound DHS notwithstanding this Court's order incorporating and enforcing the settlement agreement, Plaintiffs promptly moved to enforce the settlement agreement.  ECF 32.  LWV and EPIC filed an amicus brief in opposition to Plaintiffs' motion.  ECF 37-1.

The Court granted Plaintiffs' motion, finding that "Defendants are plainly in violation of the settlement agreement," and explaining that "[t]he fact that Defendants disabled those features to comply with Judge Sooknanan's order does not change the fact that they violated the agreement."  ECF 45, at 5.  That Judge Sooknanan concluded that the modifications to SAVE were inconsistent with federal law, moreover, did not "somehow undo" the Court's "implicit determination" to the contrary when it approved the settlement agreement.  ECF 45, at 6.  After all, the Court "is not bound by Judge Sooknanan's order," and "the Court disagree[d] with the conclusions in that order."  ECF 45, at 7.  In granting Plaintiffs' motion, the Court ordered Defendants to "immediately comply" with the settlement agreement "by reinstating Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system."  ECF 45, at 9–10.

10

**F.    LWV and EPIC move to intervene.**

The next day, LWV and EPIC moved to intervene as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Rule 24(b). ECF 48.  LWV and EPIC proposed to intervene to "defend their interests in the Eleventh Circuit by filing a notice of appeal."  ECF 48, at 2.

**ARGUMENT**

**I.    LWV and EPIC's motion is untimely.**

Movants' bids for intervention as of right and for permissive intervention fail for the same reason: Their motion is sorely untimely.  Intervention under either Rule 24(a) or 24(b) must be timely filed.  *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019); *see Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002).  "Courts consider four factors in assessing timeliness: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness."  *Advance Loc. Media*, 918 F.3d at 1171 (citing *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017)).  Movants fall well short under these factors.

11

Movants argue that their motion is timely because it came one day after the Court issued an order enforcing the settlement agreement. ECF 48-1, at 12. That's the wrong timeframe. They were on notice of the need to intervene since at least December 5, 2025, when Defendants notified the *LWV* parties and court about the settlement agreement here. *League of Women Voters*, No. 25-cv-3501, ECF 59 (D.D.C. Dec. 5, 2025). In other words, Movants knew of their interest in this case for more than *seven months* before they sought to intervene. *See United States By Bell On Behalf of Marshall v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir. 1977) (affirming denial of intervention motion as untimely where applicants waited "seven and a half months after the judgment" to intervene).[1]

Put another way, Movants do not seek to argue on appeal only that the Court's enforcement order is wrong. They also want to argue that the settlement agreement itself is unlawful. ECF 48-1, at 26. But the settlement agreement, and the Court's order incorporating that settlement agreement, was entered more than seven months ago, and Movants found out about it no later than a few days after the order was entered. Yet they waited all this time to intervene.

---

[1] Even the cases Movants rely on reveal that seven months is far too long. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390, 395 (1977) (intervention 18 days after final judgment timely); *Advance Loc. Media*, 918 F.3d at 1172 (intervention two months after party's interest became clear weighed "slightly against timeliness"); *Salvors*, 861 F.3d at 1278 (intervention timely when reason for intervention arose two weeks before party sought to intervene); *Howard v. McLucas*, 782 F.2d 956, 960 (11th Cir. 1986) (intervention timely when filed six weeks after proposed consent decree was announced); *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970) (intervention one day after judgment was appropriate).

Movants counter that it was "not clear" that the settlement agreement had any effect on "the *LWV* case" because the filing of that case "predated the settlement agreement," because Defendants "asserted that the settlement could not bind them to unlawful action," because the parties here never briefed the legal issues in the *LWV* case," and because SSA was not a party here. ECF 48-1, at 15. Movants are wrong on all grounds.

To begin, Movants' asserted interest in this case is not simply the "effect on the *LWV* case." Movants assert that the modifications to SAVE "inflicted privacy or reputational injuries, voter injuries, and procedural injuries," and "[c]ompliance with this Court's 'contradictory order[]' would reimpose these" alleged harms. ECF 48-1, at 19. Yet the settlement agreement makes clear that Defendants are required to maintain the modifications to SAVE in the Plaintiff States, thereby allegedly causing Movants' supposed injuries. Movants thus knew beyond a shadow of a doubt of their interest in this case when they were notified of the settlement agreement in December 2025. *See Campbell v. Hall-Mark Elecs. Corp.*, 808 F.2d 775, 777 (11th Cir. 1987) ("Possessing actual knowledge that the private parties were proceeding toward a settlement, the Secretary could not then bury his head in the sand and later claim that he was unaware of the potential adverse effect such a settlement might have on his own interests."). That their D.C. lawsuit predated the settlement agreement is of no moment—the relief they sought directly conflicted with Defendants' obligations under the settlement agreement, meaning that they could and should have anticipated the current conflicting orders when the agreement was

13

finalized. Moreover, it is deeply misleading of Movants to argue that their lawsuit is first in time because the settlement agreement in this case is the culmination of several separate cases that the Plaintiff States filed beginning in October 2024. Movants could have sought intervention in any or all of those cases before they were consolidated in this Court. Instead, they waited nearly a year, and filed their own litigation in a different venue. They now belatedly seek to avoid the consequences of their own decisions.

Movants also suggest that because the settlement agreement does not require Defendants to violate federal law, they could not have known that the Court would enforce the settlement agreement in the face of a conflicting district court order. It is hornbook law, however, that one district court's holding does not bind another district court. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)). And as the Court acknowledged, "it would not have approved the agreement if it had any concern that those features were unlawful." ECF 45, at 6 n.5.[2] In short, Movants knew about the settlement agreement in this case and the effect it would have on their interests but sat on their hands for seven months before attempting to intervene.

---

[2] Whether or not SSA is a party here matters not: Defendants are bound under the settlement agreement to maintain the modified SAVE features.

14

Movants next suggest that the parties are not prejudiced by their delay in moving to intervene. ECF 48-1, at 16. Again, Movants are incorrect. Had they promptly moved to intervene after the case was dismissed, Movants could have raised all the arguments they now seek to raise about the lawfulness of the settlement agreement and the obligations it imposes on Defendants. And all the parties would have had a chance to fully brief those issues. Now, however, Movants seek to challenge the enforcement order in the Eleventh Circuit on bases that were never briefed by the parties, on a record that is undeveloped. *See* ECF 48-1, at 8 (explaining that DHS and SSA "produced voluminous administrative records and the parties engaged in extensive dispositive motion briefing" in *LWV*). In other words, Movants seek to make the arguments that they made in the *LWV* case for the first time in the Eleventh Circuit, without allowing this Court or the parties to this case to address those issues or develop a record in the first instance. Doing so would "unduly delay or prejudice the adjudication of the rights of the original parties," *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990), because the Court has *already* adjudicated the rights of the original parties by incorporating the settlement agreement into its dismissal order. Movants may not seek to unwind the parties' settlement on appeal seven months after failing to intervene to challenge the settlement agreement in the first place.

By contrast, Movants will not suffer any prejudice absent intervention. They are continuing to litigate the *LWV* case on appeal. And Defendants have not revealed whether they intend to appeal this Court's enforcement order—indeed, Defendants

*opposed* Plaintiffs' motion to enforce the settlement agreement. *See Reeves v. Wilkes*, 754 F.2d 965, 971 (11th Cir. 1985). The only question of law or fact that an appeal of the enforcement order would properly present, moreover, is whether Defendants breached the settlement agreement. *See* ECF 48-1, at 26 (seeking to intervene for the "limited purpose of participation in any further enforcement proceedings, including staying or appealing this Court's order on the motion to enforce"). That fact is not in dispute; an appeal would be futile. ECF 45, at 5 ("it is undisputed that [Defendants] disabled the bulk-upload and SSN-search features that the agreement expressly required the SAVE system to have"). And the Fifth Circuit just denied a motion to intervene on similar grounds. *See United States v. Texas*, No. 25-10898, --- F.4th ---, 2026 WL 1983151 (5th Cir. July 9, 2026) (affirming denial of motions to intervene because movants' attempts to intervene would be futile). This Court should do the same here.

Finally, Movants suggest that unusual circumstances weigh in favor of finding that their motion is timely here because of the existence of "two conflicting orders." ECF 48-1, at 17. But no unusual circumstances prevented Movants from moving to intervene seven months ago, and they knew then that two conflicting orders would result if Judge Sooknanan granted them the relief they sought.

## II.    In the alternative, LWV and EPIC have not established standing to intervene.

Unless Defendants appeal the Court's enforcement order, Movants' motion to intervene fails for another, independent reason: They lack standing to bring their claims. Movants admit that they seek to intervene for purposes of appeal, but to

16

"appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019); *see Cox Cable Commc'ns, Inc. v. United States*, 992 F.2d 1178, 1181 (11th Cir. 1993) ("It is well-settled . . . that when an intervenor appeals and the party on whose side he intervened does not, the intervenor must demonstrate standing in order to continue the suit.").

Movants lack standing to enforce (or avoid enforcement of) the settlement agreement.  It imposes obligations and duties only on the parties—none of which are Movants.  *See Martin v. Wilks*, 490 U.S. 755, 762 (1989) ("A judgment or decree among parties to a lawsuit resolves issues as among them," and "it does not conclude the rights of strangers to those proceedings.").  Movants know that—Judge Sooknanan relied on *Martin v. Wilks* in her determination that this Court's order bore no basis for her to limit her own order. *See League of Women Voters,* No. 25-cv-3501, ECF 123. Movants have no rights under the settlement agreement; they were not parties to the negotiations; and they have no legally protectable interest in whether or how that agreement is enforced.[3]

Likewise, Movants' asserted injuries do not support standing.  They claim an interest in this case based on "privacy or reputational injuries, voter injuries, and

---

[3] Movants add that "when a nonparty has an interest that is affected by a district court judgment, the 'better practice' is for such a nonparty to seek intervention for purposes of appeal."  ECF 48-1, at 19.  So Movants concede that it is the *order incorporating the settlement agreement*, not the enforcement order, that supposedly impairs their interest.  That only highlights the untimeliness of their motion: The order was entered more than seven months ago.  The "better practice"— indeed the required practice—is to *timely* intervene.

procedural injuries" stemming from the SAVE modifications' alleged violation of the Social Security Act, Privacy Act, and Administrative Procedure Act." ECF 48-1 at 17–18. But this Court has already rejected the premise that the SAVE modifications violate any statute. ECF 45 at 6 n.5*; see id.* at 7–8. And the premise is flawed for the additional reasons Defendants raised in their D.C. Circuit stay application. *League of Women Voters v. DHS*, No. 26-5243, Doc. #2182390, at 10–15 (D.C. Cir. July 8, 2026). Namely, the alleged privacy, reputational, and procedural injuries are insufficiently concrete, *id.* at 14–15, and the only concrete harms alleged are only traceable to and redressable by States, not the federal Defendants, *id.* at 10–14. Because Movants have not demonstrated standing to appeal, if Defendants choose not to appeal, granting intervention would be improper.

**CONCLUSION**

For these reasons, the Court should deny LWV and EPIC's motion to intervene.

Respectfully submitted.

JAMES UTHMEIER
 *Attorney General*

DAVID M.S. DEWHIRST (FBN 110951)
 *Solicitor General*

*/s/ Jason J. Muehlhoff*
JASON J. MUEHLHOFF (FBN 1076410)
 *Chief Deputy Solicitor General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3300
jason.muehlhoff@myfloridalegal.com

ASHLEY E. DAVIS (FBN 48032)
General Counsel
Florida Department of State
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(850) 245-6531

*Counsel for Plaintiffs State of Florida and the
Florida Department of State*

BRENNA BIRD
Attorney General of Iowa

/s/ Patrick Valencia
ERIC H. WESSAN
Solicitor General
PATRICK C. VALENCIA
Deputy Solicitor General
ANGELA STUEDEMANN
Assistant Attorney General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
Eric.wessan@ag.iowa.gov
Patrick.valencia@ag.iowa.gov

19

Angela.stuedemann@ag.iowa.gov

*Counsel for Plaintiffs Brenna Bird and Paul Pate*

MICHAEL BUSCHBACHER
NICHOLAS CORDOVA
Boyden Gray PLLC
800 Connecticut Avenue NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
ncordova@boydengray.com

*Counsel for State of Ohio and Ohio Secretary of State Frank LaRose*

/s/ Blake E. Lanning
BLAKE E. LANNING
Assistant Chief Deputy
Attorney No. 35282-24

Office of the Indiana Attorney General
302 W. Washington St., IGCS – 5th Floor
Indianapolis, IN 46204-2770
Telephone: (317) 232-1146
Fax: (317) 232-7979
Email: Blake.Lanning@atg.in.gov

20

**CERTIFICATE OF SERVICE**

I certify that on July 10, 2026, a true and correct copy of the foregoing was filed

with the Court's CM/ECF system, which provides service to all parties.

/s/ Jason J. Muehlhoff
CHIEF DEPUTY SOLICITOR GENERAL

21