UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA AND THE
FLORIDA DEPARTMENT OF
STATE, *et al.*,

      *Plaintiffs*,

      v.

DEPARTMENT OF HOMELAND
SECURITY AND MARKWAYNE
MULLIN,

      *Defendants*.

Case No. 3:24-cv-509-TKW-HTC

**REPLY IN SUPPORT OF
LEAGUE OF WOMEN VOTERS' AND ELECTRONIC PRIVACY
INFORMATION CENTER'S EMERGENCY MOTION TO INTERVE**

**INTRODUCTION**

As this Court recognized, its "recent order enforcing the [parties'] settlement agreement heightened the proposed intervenors' interest in this case because that order has the potential to deprive them of at least part of the remedy that they obtained" in *League of Women Voters ("LWV") v. DHS*, --- F. Supp. 3d ----, 2026 WL 1784297 (D.D.C. June 22, 2026) ("*LWV I*"), vacating the modifications to the Systematic Alien Verification for Entitlements ("SAVE") system. ECF 49 at 1-2. In arguing that Proposed Intervenors should have intervened *prior to* this Court's July 7, 2026, enforcement order, the parties misapprehend the basis for intervention by erroneously claiming Proposed Intervenors seek to challenge the parties' *settlement agreement* (the "agreement"), rather than the enforcement order. As their emergency motion makes clear, Proposed Intervenors are seeking to intervene *solely* "for purposes of appealing the Court's enforcement order." ECF 48 at 2 n.1. The parties' error is fatal, and their other arguments opposing intervention are equally meritless.

Because Proposed Intervenors seek to intervene to appeal the enforcement order, it is irrelevant whether they could have intervened prior to it. *Contra* ECF 50 at 11-18, ECF 51 at 11-16. In any event, Proposed Intervenors likely could *not* have intervened earlier, nor did they have any actual need to.

Moreover, recent developments demonstrate that Proposed Intervenors' interest in intervention is even greater now than it was when they filed their motion.

As of July 10, "[b]ulk-upload capability for Florida, Ohio, Iowa, and Indiana (but nobody else) has now been restored" and "Social Security Number searches have now also been restored for Florida, Ohio, Iowa, and Indiana." ECF 51-1. Plaintiffs' challenge to Proposed Intervenors' standing therefore fails: Proposed Intervenors have standing to appeal based on their interest in compliance with the *LWV* judgment.

While the *circumstances* here may be complex, this *motion* is straightforward: Proposed Intervenors are seeking to intervene to appeal an order entered only days ago and which conflicts with the *LWV* decision, and they are experiencing harm every day that order remains in effect. In resolving this motion, this Court need not decide or revisit any questions about the legality of modified SAVE or the interpretation of the agreement. It simply must decide whether Proposed Intervenors have timely sought to protect a cognizable interest. As the Supreme Court has made clear, intervention to appeal is proper so long as the intervenor "acted promptly after the entry of final judgment," *i.e.*, the decision to be appealed. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977). Proposed Intervenors did so here, and the balance of remaining factors weigh in their favor, so the Court should grant their emergency motion.

2

## ARGUMENT

**I.  The Proposed Intervenors' emergency motion is timely.**

**A. The opposition briefs ignore that Proposed Intervenors are seeking leave to intervene to appeal the enforcement order.**

The oppositions disregard that Proposed Intervenors seek to intervene solely "for purposes of appealing the Court's *enforcement order*." ECF 48 at 2 n.1 (emphasis added); *see also* ECF 48-1 at 26-27; ECF 48-2; ECF 48-3. Plaintiffs' opposition hinges on the false premise that Proposed Intervenors are "not seek[ing] to argue on appeal only that the Court's enforcement order is wrong" and instead "want to argue that the *settlement agreement* itself is unlawful." ECF 50 at 12 (emphasis added). And Defendants erroneously peg their arguments to when Proposed Intervenors had notice of the agreement. *See* ECF 51 at 13-16. These mistakes are dispositive.

Whether intervention "for the purpose of appealing" is timely turns on whether the intervenor "acted promptly after the entry of" an appealable decision. *McDonald*, 432 U.S. at 396. The "critical fact" "is that once the entry of [a decision] made the adverse … determination appealable, the [intervenor] quickly sought to enter the litigation." *McDonald*, 432 U.S. at 394.

Neither opposition meaningfully grapples with *McDonald*'s binding rule governing intervention "for the purpose of appealing." 432 U.S. at 396. Defendants do not even acknowledge *McDonald*. And Plaintiffs only acknowledge that in

3

*McDonald*, the Court held that "intervention 18 days after final judgment [was] timely." ECF 50 at 12 n.1. But here, Proposed Intervenors' interest did not ripen until the enforcement order, and Proposed Intervenors moved to intervene *the next day*—meaning their argument for intervention is stronger than in *McDonald*, which controls.

**B. The opposition briefs misapply the Eleventh Circuit's four timeliness factors.**

If the Court looks any further, the timeliness factors from *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977), also establish the motion's timeliness.

"A motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (citing *Stallworth*, 558 F.2d at 267); *accord NAACP v. New York*, 413 U.S. 345, 365-66 (1973). Defendants' argument that a single factor—notice—is dispositive thus misstates the law. *Contra* ECF 51 at 13. Moreover, prejudice—not notice—is the most important *Stallworth* factor. *See Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1479 (11th Cir. 1993).

Properly applying *Stallworth* demonstrates the motion is timely.

**1. Intervention will not prejudice the parties.**

Proposed Intervenors seek to intervene for purposes of appeal—the next logical step in this litigation since the enforcement order is appealable. *See* ECF 45

4

at 9; 28 U.S.C. § 1292(a)(1). The time for appeal just started. *See* ECF 48-1 at 12, 16; *see also* Fed. R. App. Proc. 4(a)(1)(B). And Defendants have not stated they plan to appeal. A litigant "can hardly contend" that it "was unfairly prejudiced simply because an appeal on behalf of [an intervenor] was brought[.]" *McDonald*, 432 U.S. at 394. This weighs heavily in favor of granting intervention, because prejudice—or lack thereof—is the "essence of the timeliness inquiry." *Meek*, 985 F.2d at 1479.

Defendants do not identify prejudice. Further, the purported prejudices Plaintiffs claim are legally irrelevant and rest on an incorrect premise. Plaintiffs argue they are harmed because "Movants could have raised all the arguments they now seek to raise about the lawfulness of the settlement agreement[.]" ECF 50 at 15. But this "mere delay in determining the rights of existing parties is not a relevant consideration." *Meek*, 985 F.2d at 1479 (citing *Stallworth*, 558 F.2d at 265).

Plaintiffs' delay argument also rests on a false premise because, as described above, Proposed Intervenors are challenging the enforcement order—not the lawfulness of the agreement—and promptly moved to intervene after its entry. Nor did Proposed Intervenors understand the agreement, at the time it was entered, to resolve issues about whether Defendants and SSA were violating federal law. *See United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981); *see also Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992).

Relatedly, because Proposed Intervenors only seek to challenge the enforcement order, Plaintiffs are incorrect that they are prejudiced because "Movants seek to make the arguments that they made in the *LWV* case for the first time in the Eleventh Circuit, without allowing this Court or the parties to this case to address those issues or develop a record in the first instance." ECF 50 at 15. The arguments on appeal will address the same issues that Plaintiffs, Defendants, and Proposed Intervenors (as amici) addressed in briefing Plaintiffs' motion to enforce. *See* ECF 32, 37-1, 42. And though the issues in the motion to enforce touched on the *LWV* decision, Plaintiffs concede this Court already made both an "'implicit determination' . . . when it approved the settlement agreement," *see* ECF 50 at 10, and explicitly rejected the *LWV* conclusions in granting the motion to enforce, *see id.* at 18, refuting Plaintiffs' argument that an appeal would litigate the effect of *LWV* "without allowing this Court or the parties to this case to address those issues[,]" *id.* at 15. In any event, an intervenor pressing supposedly new arguments on appeal is *not* a cognizable form of prejudice. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 281 (2022) (rejecting argument that "intervention would prejudice respondents because the attorney general's rehearing petition pressed an issue (third-party standing) that had not been raised").

## 2. Denying intervention will grievously prejudice Proposed Intervenors.

The Court already "recognize[d] that its recent order enforcing the settlement agreement heightened the proposed intervenors' interest in this case because that order has the potential to deprive them of at least part of the remedy that they obtained." ECF 49 at 1-2. That interest has only intensified, because Defendants and SSA have now "restored" modified SAVE's "[b]ulk-upload capability" and "Social Security Number searches . . . for Florida, Ohio, Iowa, and Indiana." ECF 51-1. In other words, Defendants and SSA are *currently* violating the *LWV* order, prejudicing Proposed Intervenors' interests in the judgment in *LWV*.

Plaintiffs also contend any appeal would be futile. *See* ECF 50 at 16. In their telling, the "only question of law or fact that an appeal of the enforcement order would properly present, moreover, is whether Defendants breached the settlement agreement," and "that fact is not in dispute," *id*., due to this Court's enforcement order. This is wrong for two reasons.

First, the question of whether Defendants breached the settlement agreement will in fact be front-and-center on appeal. Indeed, Proposed Intervenors previously explained how enforcing the agreement would be improper because Defendants *could not* have violated the agreement—based on its plain terms and Supreme Court precedent—by engaging in conduct that a federal court ruled violated federal law. *See* ECF 37-1 at 8-11. Plaintiffs conflate the undisputed *factual* question of whether

7

Defendants have disabled aspects of modified SAVE with the recently ripened and disputed *legal* questions of (1) whether Defendants' compliance with another federal court judgment constituted breach of an agreement that expressly disclaims any obligations contrary to federal statute, and (2) whether a court can order specific performance to enforce an agreement after another court has found that such performance violates federal law. These questions will be in dispute before the Eleventh Circuit. *Contra* ECF 50 at 5.

Second, this is not the only line of inquiry on appeal, as the Court's analysis turned on additional considerations, such as the obligations the enforcement order placed on SSA, which is not before this Court but is subject to the preexisting *LWV* order; whether modified SAVE is consistent with federal law; the balance of harms; and principles of comity. *See* ECF 45.

### 3. Proposed Intervenors moved to intervene when their interest accrued.

As explained above, Proposed Intervenors are seeking to intervene to appeal the enforcement order, and they sought leave one day after that order.

Ignoring this, Plaintiffs and Defendants cite earlier stages at which, in their view, Proposed Intervenors should have intervened. But the burden on intervenors is to seek "to intervene 'as soon as it bec[omes] clear' that the [intervenor's] interests 'would no longer be protected' by the parties in the case." *Cameron*, 595 U.S. at 279-80 (quoting *McDonald*, 432 U.S. at 394).

8

Here, it became clear that Proposed Intervenors' interests were no longer protected by any parties in this case only once this Court issued its enforcement order and Defendants complied. Before then, it was not clear that the settlement agreement would have any effect on the *LWV* case, given that, until June 22, 2026, there was no decision in *LWV* and the agreement provided that it could not bind the parties to unlawful action. *See* ECF 37-1. Indeed, just a few days ago, Defendants told this Court that "the Settlement Agreement cannot impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the *League of Women Voters* vacatur order's interpretation of the Social Security Act and Privacy Act." ECF 42 at 7.

In *LWV*, Proposed Intervenors were seeking an order that they understood would render the "challenged agency action[s] 'void,'" *Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025), and would "retroactively undo[] or expunge[]" the government's changes to SAVE, *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021). Until the Court's enforcement order, Proposed Intervenors reasonably expected that if they prevailed in *LWV*, that would necessarily alter performance of the agreement in this case, given its carveout for unlawful action. *See* ECF 30-1 ¶ 17.

That is the view that Proposed Intervenors advanced in their amicus brief. "[T]he thrust of the [] laws cannot be avoided merely by claiming that the otherwise

illegal conduct is compelled by contractual obligations. Were it otherwise, the []
laws could be nullified. Contractual obligations cannot thus supersede statutory
imperatives." *United States v. Loew's, Inc.*, 371 U.S. 38, 51 (1962), *abrogated on
other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006). Thus,
the "United States" is never "bound" by an "agreement to do or cause to be done
what the law does not sanction or permit." *OPM v. Richmond*, 496 U.S. 414, 420
(1990) (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408–409
(1917)); *accord LWV II*, 2026 WL 1972055, at *8. A contrary rule would lead to
absurd and unconscionable results. Consider a private contract in which a seller
agrees to sell 100 sharks to a buyer unless a court of competent jurisdiction finds the
sale of the sharks to be unlawful. The *contract itself* may not be unlawful. But few
would contend that this contract remains enforceable for specific performance *even
after* a court specifically finds shark sales unlawful, for example because they are a
protected species.

Additionally, while Plaintiffs and Defendants both contend that Proposed
Intervenors should have sought to intervene shortly after the parties entered and the
Court adopted the agreement, *see* ECF 50 at 12-14, ECF 51 at 13-16, neither party
suggests that Proposed Intervenors *actually could have* intervened at that time.
Though intervention was unnecessary until the enforcement order because of the
agreement's prohibition on performance in violation of federal law, it is at best

10

questionable whether Proposed Intervenors could have intervened earlier even if they wanted to, for two reasons.

First, Proposed Intervenors likely could not have intervened sooner to appeal the consent judgment unlike the enforcement order. *See Clark v. Hous. Auth. of City of Alma*, 971 F.2d 723, 726 (11th Cir. 1992) (recognizing consent judgments are not appealable except in limited circumstances, such as "where the stipulation of judgment expressly recognized the defendant's intent to appeal," as well as "where [there is a] lack of actual consent or failure of subject matter jurisdiction is alleged").

Second, it is likely Proposed Intervenors also lacked the ability to collaterally challenge the consent decree. *See*, *e.g.*, *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) ("Once the district court approves the consent decree, however, the original case or controversy evaporates, and an intervenor appealing the decree must assert an independent case or controversy in order to maintain standing."); *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1337 (11th Cir. 2007) *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977). No such questions exist now about Proposed Intervenors' ability to challenge the *enforcement order*, as Proposed Intervenors have standing given the conflict between the enforcement order and *LWV*. *See infra* Section II.

### 4. Unusual circumstances weigh in favor of granting intervention.

The only argument that Plaintiffs raise on this factor is that "no unusual circumstances prevented" Proposed Intervenors from moving to intervene earlier when "they knew then that two conflicting orders would result if [the *LWV* court] granted them the relief they sought." ECF 50 at 16. That is not true where the plain terms of the agreement carved out unlawful activity, and Supreme Court precedent makes clear that consent decrees requiring conduct subsequently held unlawful are void and unenforceable.

This emergency motion is not about whether one district judge's rulings are binding on another. *Contra* ECF 50 at 14. Rather, Proposed Intervenors seek *the ability* to appeal whether the enforcement order, because, as the Court has already acknowledged, it bears directly on Proposed Intervenors' interests, *see* ECF 49 at 1-2, and the obligations of Defendants and SSA, *see* ECF 45 at 5-7, 9. The attendant circumstances—highly unusual "conflicting orders," ECF 45 at 8, from separate federal courts, forcing an Executive Branch agency to choose which court order to comply with, *see* ECF 45 at 7 ("One of the orders has to give")—weigh strongly in favor of granting intervention.. These unusual circumstances and the benefits that would be provided by clarity about the enforcement order strongly counsel in favor of granting intervention.

**C. The remaining intervention factors also weigh in favor of intervention.**

No party seriously contests that Proposed Intervenors have an interest in the enforcement order—something this Court has already recognized. ECF 49 at 1-2. And no party contests that Defendants' compliance with the enforcement order will impair LVW's and EPIC's interests—indeed Plaintiffs concede that Proposed Intervenors have "concrete harms" that are "traceable to and redressable by States" such as Plaintiffs. ECF 50 at 18; *see also id.* at 6.

Similarly, no party contests that Proposed Intervenors' interests are inadequately represented by the parties. That has become undeniable over the last few days, since this Court issued its enforcement order, because Defendants are now actively violating—rather than protecting—the *LWV* judgment, *see* ECF 51-1.

This is a stark contrast from Defendants' prior position. *See* ECF 42 at 7. Indeed, Defendants were taking steps to comply with the *LWV* order when Plaintiffs brought their motion to enforce. Defendants now have restored bulk-upload and SSN searches for Plaintiffs. *See* ECF 51-1. Defendants also have not taken any actions that might protect Proposed Intervenors' interest in this matter—such as seeking reconsideration of the enforcement order, appealing, or moving for a stay. Plus Defendants tellingly *make no claim* that they adequately represent Proposed Intervenors' interests. *See generally* ECF 51.

13

**D. The Proposed Intervenors have standing to intervene for purposes of appealing the enforcement order.**

Proposed Intervenors have standing because "[a] party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment" and therefore "ha[s] standing to seek its vindication." *Salazar v. Buono*, 559 U.S. 700, 712 (2010). "Having obtained a final judgment granting relief on [their] claims, [Proposed Intervenors] ha[ve] standing to seek its vindication." *Id.*

Defendants do not contest this point or dispute Proposed Intervenors' standing at all, and Plaintiffs again misfocus on the *agreement* "impos[ing] obligations and duties only on the parties" and Proposed Intervenors "hav[ing] no rights under the settlement agreement." *Id*. at 17. The *enforcement order* "conflict[s]" with the *LWV* order, ECF 45 at 8, which Proposed Intervenors unquestionably have an interest in protecting.

## CONCLUSION

Proposed Intervenors respectfully request this Court grant the Emergency Motion to Intervene.

14

Dated: July 13, 2026

Respectfully submitted,

*/s/Lauren C. Bingham*

Lauren C. Bingham
Fla. Bar No. 105745
LBingham@citizensforethics.org
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565

Gerald E. Greenberg
Florida Bar No. 440094
ggreenberg@gsgpa.com
Daniel R. Walsh
Florida Bar No. 0124282
dwalsh@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
(305) 728-0950
E-service: efilings@gsgpa.com

Aman T. George*
D.C. Bar No. 1028445
ageorge@democracyforward.org
DEMOCRACY FORWARD FOUNDATION
P.O. BOX 34553
Washington, DC 20043
(202) 448-9090

*admitted *pro hac vice*

*Counsel for Proposed Intervenors*

15

**LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE**

I hereby certify that, in accordance with Northern District of Florida Rule 7.1(F), that the foregoing Motion, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 3,138 words as measured by Microsoft Office for Word.

*/s/Lauren C. Bingham*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Florida through the CM/ECF system, which will serve a true and correct copy on all counsel of record who have consented to electronic service.

*/s/ Lauren C. Bingham*